1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10   THE KOALA,                          CASE NO. 16cv1296 JM(BLM)

11                          Plaintiff,    ORDER DENYING MOTION FOR
                                          PRELIMINARY INJUNCTION;
12      v.                                GRANTING MOTION TO DISMISS;
                                          GRANTING LEAVE TO AMEND
13   PRADEEP KHOSLA; DANIEL
     JUAREZ; and JUSTIN PENNISH,
14
                            Defendants.
15

16         Plaintiff The Koala moves for a preliminary injunction to compel Defendants to

17   provide funding to support their print media publication.  Defendants Pradeep Khosla,

18   Daniel Juarez and Justin Pennish oppose the motion and separately move to dismiss the

19   complaint.  The Koala opposes the motion to dismiss.  Having carefully considered the

20   court record, pertinent legal authorities, and the arguments of counsel, the court denies

21   the motion for preliminary injunction, grants the motion to dismiss, and grants Plaintiff

22   14 days leave to amend from the date of entry of this order.

23                              **BACKGROUND**

24         Alleging that its First Amendment rights were violated, The Koala seeks

25   declaratory and injunctive relief to compel Defendants to provide/restore funding to

26   support their print media publication.  The Koala is an unincorporated, expressive

27   student association and registered student organization ("RSO") of the University of

28   California San Diego ("UCSD").  Defendant Pradeep Khosla ("Chancellor") is the

Chancellor of UCSD and responsible for the organization, operation, and internal administration of the campus.  Defendant Daniel Juarez ("President") is the President of the Associated Students of UCSD ("Associated Students").  The Associated Students is the official student government for UCSD.  Defendant Justin Pennish ("Financial Controller ") is the Financial Controller of Associated Students and responsible for the allocation and expenditure of funds.   All Defendants are sued in their official capacities.  The Koala seeks prospective relief only, not damages.  Plaintiff's claims arise from the following generally described allegations.

<u>The Associated Students</u>

The Associated Students is a student government organization of UCSD.  The mission of the Associated Students is to "exercise the rights and responsibilities of students to participate in the governance of the University; to manage, invest and maintain the assets of the Association; to create and execute programs which serve the collective interests of the undergraduate population; and to advocate for students within the University, the community, the state, and the nation."  (RJN ¶¶ 5, 7)

UCSD collects campus activity fees from its students and allocates the income to Associated Students.  Following UCSD policy, Associated Students is to provide "financial and other tangible support for student activities and organizations … to further discussion among students of the broadest range of ideas," and "to stimulate on-campus discussion and debate on a wide range of issues from a variety of viewpoints."  The funding decisions "must be viewpoint-neutral in their nature; that is, they must be based upon considerations which do not include approval or disapproval of the viewpoint of the Registered Campus Organization or any of its related programs or activities."  (RJN ¶ 7).

The President and Financial Controller make initial funding recommendations to the legislative branch of the Associated Students, referred to as the Senate.  The Senate is tasked with representing "the interests and opinions of the UCSD undergraduates" and is responsible for "writ[ing] and maintain[ing] the rules, policies

1   and procedures."

2       For the 2015-2016 academic year, budgeted revenues of Associated Students
3   were about $3.7 million.  Of that amount, the office of Student Organizations was
4   allocated about $432,000.  Prior to the Senate's November 18, 2015 amendment to the
5   Standing Rules, RSOs, like The Koala, could receive up to a maximum of $1,000 per
6   quarter for printed media costs.  The 2015-2016 budget contained a $17,000 line item
7   for these printed media costs.  The Funding Guide also noted that the receipt of funding
8   was not guaranteed and that not all media organizations "may not be fully funded in
9   every circumstance for budgetary or other reasons."  While ten or more RSOs requested
10  print media funding between 2010 and 2013, for the Fall of 2015 only two RSOs
11  applied for funding.  Plaintiff was one of those and received $634 in funding for the
12  Fall of 2015 and was approved for $453 for the Winter of 2016.

13      On November 18, 2015, the Senate, on a 22-2 vote, passed the Media Act.
14  Among other things, the Media Act eliminated funding for all printed media, a funding
15  source for RSOs like Plaintiff.  It is this decision that gives rise to Plaintiff's request
16  to restore or provide access to funding.

17      Plaintiff's Claims

18      The Koala publishes a satirical student newspaper at UCSD.  It publishes on
19  average two to three publications per year.  (Cart Decl. ¶2).  The publications are
20  available in print and on-line.  According to Plaintiff, the publications's content has
21  provoked significant controversy over the years.  On November 16, 2015, Plaintiff
22  published an article entitled "UCSD Unveils New Dangerous Space on Campus."  The
23  article satirized the concept of "safe places" on college campuses and referenced ethnic
24  and sexist stereotypes and employed racial epithets.  Following publication of the
25  article, both on the internet and in print, UCSD received numerous complaints about
26  the article's perceived offensiveness.  (FAC ¶52).

27      On November 18, 2015, UCSD released a statement denouncing the publication
28  and its use of "offensive and hurtful language."  That evening, the Associated Students

held its regular meeting where the Vice Chancellor of Student Affairs read the official statement denouncing the Koala for its article and several speakers objected to continued funding of The Koala.  Ultimately, the Senate voted to end funding for RSOs seeking print media funding.  The elimination of funding has allegedly caused Plaintiff to reduce the number of its yearly print publications (but not the on-line publications).[1]

In broad brush, Plaintiff contends that Defendants violated the Free Press and Free Speech Clauses of the First Amendment by "categorically refusing to provide campus activity fee funding for the publication of student print media."  (FAC ¶¶ 84-87).  Plaintiff seeks prospective injunctive relief, and not compensatory damages for lost funding.

## DISCUSSION

### The Motion for Preliminary Injunction

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." University of Texas v. Camenisch, 451 U.S. 390, 395 (1981).  Preliminary injunctive relief is available if the party meets one of two tests: (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the party raises serious questions and the balance of hardship tips in its favor.  Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987).  "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Id.  Under both formulations, however, the party must demonstrate a "fair chance of success on the merits" and a "significant threat of irreparable injury." Id; Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.,240 F.3d 832, 840-41 (9th Cir. 2001).  Further, courts are required to consider the public interest where the public interest may be affected.  In re Excel Innovations, Inc., 502 F.3d 1086, 1093 (9th Cir. 2007).

---

[1] Defendants represent that print media funding was on the Senate's agenda prior to publication of the article; and that a decision to terminate funding was also reached prior to learning of the publication of the dangerous places article.

Before turning to the relief requested, the court addresses Defendants' argument that this entire action is barred by the Eleventh Amendment.

**The Eleventh Amendment**

The Eleventh Amendment provides:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The Eleventh Amendment extends to suits by citizens against their own States. Board of Trustees of the Univ of Alabama v Garrett, 531 U.S. 356, 363 (2001). The ultimate guarantee of the Eleventh Amendment is that non-consenting States or their agencies may not be sued by private individuals in federal court. Id. Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and "act[s] pursuant to a valid grant of constitutional authority." Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73 (2000).

Under the doctrine developed in Ex parte Young, 209 U.S. 123, 166 (1908), actions brought against state officials to enjoin them from continuing to enforce allegedly unconstitutional state laws are not necessarily deemed actions against the state and are, therefore, not barred by the Eleventh Amendment. The Supreme Court recognizes that the "general criterion for determining when a suit is in fact against the sovereign is the effect of the relief sought." Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 107 (1984). The doctrine rests on the premise, or "fiction," "that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes. The doctrine is limited to that precise situation, and does not apply 'when 'the state is the real, substantial party in interest [] as when the 'judgment sought would expend itself on the public treasury or domain, or interfere with public administration.'" Id. "Naming state officials as defendants rather than the state itself will not avoid the Eleventh Amendment when the state is the real party in interest. The state is the real

party in interest when the judgment would tap the state's treasury or restrain or compel government action." <u>Almond Hill Sch. v. U.S. Dep't of Agric.</u>, 768 F.2d 1030, 1033 (9th Cir. 1985).

    "<u>Ex parte Young</u> cannot be used to obtain an injunction requiring the payment of funds from the State's treasury." <u>Virginia Office for Protection and Advocacy v, Stewart</u>, 563 U.S. 247, 256-57 (2011).  Prospective financial consequences to the state are acceptable, and do not interfere with a state's Eleventh Amendment rights, where the fiscal effects "are necessarily incident to compliance with prospective orders." <u>Almond Hill</u>, 768 F.2d at 1034.

    Here, the relief requested in the FAC constitutes a claim against the state treasury and interferes with the state's administration of UCSD.  At the heart of Plaintiff's claim is a request to provide/restore funding from the state.  Plaintiff seeks the restoration of funding for those RSOs who previously received funding for print media.  The funding is not incidental to Plaintiff's claims.  Rather, the receipt of funding **is** Plaintiff's remedy.  Plaintiff cannot avoid the Eleventh Amendment by recasting its claim as one for prospective injunctive relief, when that relief is solely dependent upon obtaining funds from the state treasury.

    While Plaintiff characterizes its remedy as one for prospective injunctive relief only, Plaintiff ignores that this remedy would require direct payments by the state from its treasury to Plaintiff and other RSOs who had their funding eliminated when the Associated Students determined to no longer fund any print media request.  In <u>Council 31 of Am. Fed. of State, County & Munic. Workers, AFL-CIA v. Quinn</u>, 680 F.3d 875 (7th Cir. 2012), plaintiff brought an action to enjoin the State of Illinois from implementing a pay freeze for state employees.  The Seventh Circuit concluded that plaintiff's claims were barred by the Eleventh Amendment because the request for injunctive relief to enjoin implementation of the pay freeze "would require direct payments by the state from its treasury" to state employees.  Such a result "would have an effect upon the state treasury that is not merely ancillary but is the essence of the

1   relief sought,." Id. at 882-83.

2       In recognition of the limitations placed on Plaintiff's claims in federal court by
3   the Eleventh Amendment, Plaintiff argues that it is entitled to seek "an injunction
4   against enforcement of the Media Disqualification that prevents it from seeking funds
5   available to other student groups." (Oppo. at p.6:23-25).  Based upon the FAC's
6   current allegations however, the Eleventh Amendment bars Plaintiff's claims in federal
7   court.   Both §1983 claims are premised upon the allegations that Plaintiff's First
8   Amendment rights were violated by Defendants "categorically refusing to provide
9   campus activity fee funding for the publication of student print media." (FAC ¶¶85,
10  87).  Plaintiff claims that the elimination of funding to all print media RSOs by the
11  Associated Students' Senate violated its First Amendment rights and the remedy it
12  seeks is "to obtain funding for publication of student print media." (FAC ¶¶ 2-4, 85,
13  87).  While characterized as injunctive relief, the relief would have more than an
14  incidental impact on the "state treasury that is not merely ancillary but is the essence
15  of the relief sought." Id.  As currently pled, particularly in light of the weakness of
16  Plaintiff's federal claims, as discussed in the following section, the present allegations
17  caution against applying the Ex parte Young doctrine.

18      Plaintiff also argues that the present circumstances are similar to the welfare
19  cases.   In Graham v. Richardson, 403 U.S. 365 (1971), Arizona and Pennsylvania
20  welfare officials were prohibited from denying welfare benefits to otherwise qualified
21  recipients who were aliens.  The Supreme Court reasoned that imposing lengthy
22  residency requirements on aliens, as a condition to the receipt of welfare benefits,
23  violates federal law.  In Edelman v. Jordan, 415 U.S. 651, 668 (1974), the Supreme
24  Court noted that prospective relief requiring the payment of welfare funds was the
25  necessary result of compliance with federal law.  Application of Ex parte Young is not
26  always a clear-cut determination but must be viewed in light of the federal claims.  Id.
27  at 667.  As discussed in the following section, the claims alleged do not sufficiently
28  establish a right to relief.  Amendment of the complaint may correct this deficiency.

1      Plaintiff also relies on Arizona Students' Ass'n v. Arizona Board of Regents. 824
2  F.3d 858 (9th Cir. 2016) to support its claims.  There, the district court determined that
3  the Eleventh Amendment barred claims against the Arizona Board of Regents
4  ("ABOR").  The Ninth Circuit affirmed the dismissal of ABOR but held that the district
5  court erred by not granting plaintiff leave to amend to name appropriate state officials
6  and to assert claims for prospective relief to conform to the Ex parte Young doctrine.
7  The district court also erred in determining that the plaintiff failed to state a claim for
8  First Amendment retaliation - a claim not asserted by The Koala.

9      Here, the court concludes that the present allegations fail under the Eleventh
10 Amendment.  Plaintiff requests leave to amend the FAC; and the court concludes that
11 there may be circumstances to support application of the Ex parte Young doctrine.
12 Accordingly, the court grants Plaintiff leave to amend.  See Fed.R.Civ.P. 15(a)(2).

13     The court now turns to the merits of Plaintiff's claims and the requirement of
14 irreparable harm.

15 **The Merits**

16     Plaintiff broadly contends that the elimination of public funds for all print media
17 expenses by RSOs violates the First Amendment.  The Supreme Court "has adopted a
18 forum analysis as a means of determining when the Government's interest in limiting
19 the use of its property to its intended purpose outweighs the interest of those wishing
20 to use the property for other purposes."  Cornelius v. NAACP Legal Def. & Educ.
21 Fund, Inc., 473 U.S. 788, 800 (1985).  The court initially looks to the nature of the
22 forum to balance the government's interest against the rights granted by the First
23 Amendment.

24     Here, the parties appear to agree that campus activity funding of RSOs is a
25 limited public forum.  (Oppo. MTD at p.16:17).  Unlike a traditional or designated
26 public forum where government action must be narrowly tailored to serve compelling
27 state interests, government actions in a limited public forum only need to be
28 "reasonable in light of the purpose of the forum."  Seattle Mideast Awareness

1  <u>Campaign v. King Cty.</u>, 781 F.3d 489, 499 (9th Cir. 2015).

2      To identify the relevant limited public forum for purposes of a First Amendment
3  analysis, the court focuses "on the access sought by the speaker." <u>Cornelius</u>, 473 U.S.
4  at 801.  As Plaintiff seeks to restore and obtain access for funding for print media, the
5  court agrees with Defendants, based upon the FAC's current allegations, that the
6  relevant forum consists of Associated Students' funding of student print publications.
7  Plaintiff seeks to expand the relevant forum to include Associated Students' rules and
8  practices and funding activities of RSOs.  (FAC ¶29).  The court rejects Plaintiff's
9  attempt to expand the scope of the forum beyond the funding of print media
10 publications.  The Associated Students is a student government organization charged
11 with serving the diverse collective interests of the undergraduates at UCSD.  The funds
12 raised through the student activities are about $3.7 million.  These funds support
13 student organizations for such events as tournaments, competitions, sports clubs,
14 concerts and other activities.  To provide context, Plaintiff seeks to restore access to
15 the $17,000 in budgeted funds for print media publications (Plaintiff received $634 in
16 funding for Fall of 2015).

17     Having defined the limited public forum at issue, the court looks to the actions
18 taken to close the forum to all RSOs receiving print media funding.  "In a limited
19 public forum, restrictions that are viewpoint neutral and reasonable in light of the
20 purpose served by the forum are permissible." <u>DiLoreto v. Downy Unif. Sch. Dist. Bd.</u>
21 <u>Of Ed.</u>, 196 F.3d 958, 965 (9th Cir. 1999) (citing <u>Rosenberger v. Rector & Visitors of</u>
22 <u>the Univ. of Va.</u>, 515 U.S. 819, 829 (1995)).  Rather than address the alleged
23 restrictions in context of a limited public forum, Plaintiff largely responds to First
24 Amendment issues in the context of a public forum.

25     In <u>Rosenberger</u>, a university student organization which published a newspaper
26 with a Christian editorial viewport challenged the university's decision to deny funding
27 for printing costs available to other student groups.  The student organization was
28 denied funds because it was considered a religious organization in light of its content.

The Supreme Court found that the government in a limited public forum may not engage in viewpoint discrimination.  Id.  The ban on the use of student activity fees to publish Christian-themed newspapers, but not to other publications, is an "egregious form of content discrimination."  Id.

Here, based upon the limited record before the court, the elimination of funding for all print media appears both content and viewpoint neutral within the meaning of Rosenberger.  Associated Students do not provide funding for print media publications to any RSO.  While Plaintiff has cited negative complaints and comments made by the public, students, and certain Defendants for the proposition that it was singled out for its satirical expression, Plaintiff fails to cite legal authorities where the motivation, and not the conduct, of some government actors (the Senate of Associated Students) is determinative on First Amendment issues in context of a limited public forum.[2]

Finally, Plaintiff asserts that it states a claim for retaliation under the First Amendment.  The difficulty with this argument is that Plaintiff does not allege a retaliation claim.  Plaintiff may, however, amend the complaint to allege such claim.

In sum, the court concludes that Plaintiff fails to demonstrate more than a remote likelihood of success on the merits based upon the FAC's present allegations and evidentiary matters submitted to the court.  As Plaintiff requests leave to amend, the court grants 14 days leave to amend from the date of entry of this order.

**Irreparable Harm**

In light of its merits-based arguments, Plaintiff submits that the loss of First Amendment rights is sufficient, in light of the strong policy favoring upholding First

---

[2]The court notes that the vast majority of the authorities cited by the parties predate the so-called digital revolution.  Publication, once exclusively within the realm of print media, is now also communicated digitally on-line and on social media sites.  In the present case, there is no evidence to suggest that The Koala was impacted in any manner in its digital publications.  Further, the evidentiary record submitted by the parties does not focus on print media versus digital media.  There is no showing that print media (total printing budget for Plaintiff in Fall 2015, $634, and Winter 2015, $453) plays a significant role in disseminating Plaintiff's message to a computer-literate student body.  Finally, the court notes that some of the negative comments about the article originated from digital readers - readers who continue to receive unimpeded access to the Koala.

1   Amendment rights, to establish the requisite injury.  This argument is not persuasive

2   because, based on the FAC's allegations, Plaintiff fails to state a §1983 claim.

3        In sum, the court concludes that Plaintiff fails to establish the requisite

4   combination of success on the merits and irreparable harm.  The motion for preliminary

5   injunction is denied.

6        <u>The Motion to Dismiss</u>

7        For the above stated reasons, the court grants the motion to dismiss with leave

8   to amend.

9        In sum, the court denies the motion for preliminary injunction, grants the motion

10  to dismiss, and grants Plaintiff 14 days leave to amend from the date of entry of this

11  order.

12  **IT IS SO ORDERED.**

13  DATED:  November 1, 2016

14  _____

15  Hon. Jeffrey T. Miller
    United States District Judge

16  cc:       All parties

17

18

19

20

21

22

23

24

25

26

27

28

16cv1296