David Loy (SBN 229235)
**ACLU FOUNDATION OF SAN DIEGO &**
**IMPERIAL COUNTIES**
P.O. Box 87131
San Diego, CA 92138-7131
Telephone:   (619) 232-2121
Facsimile:    (619) 232-0036
davidloy@aclusandiego.org

Ryan T. Darby, Esq. (SBN 264357)
**THE LAW OFFICE OF RYAN T. DARBY**
525 B Street, Suite 1500
San Diego, CA 92101
Telephone:   (619) 858-4766
Facsimile:    (619) 243-7226
darby@darby.law

Attorneys for Plaintiff THE KOALA

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE KOALA, an unincorporated student association,<br><br>      Plaintiff,<br><br>      v.<br><br>PRADEEP KHOSLA, in his official capacity as Chancellor of the University of California, San Diego; DANIEL JUAREZ, in his official capacity as President of the Associated Students of the University of California, San Diego; and JUSTIN PENNISH, in his official capacity as Financial Controller of the Associated Students of the University of California, San Diego,<br><br>      Defendants. | **Case No.: 16cv1296 JM (BLM)**<br><br>VERIFIED ~~FIRST~~SECOND **AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>1. First Amendment Violation (Freedom of the Press)<br><br>2. First Amendment Violation (Freedom of Speech– Expulsion from Forum)<br><br>3. First Amendment Violation (Freedom of Speech– Viewpoint Discrimination)<br><br>4. First Amendment Violation (Freedom of Speech– Retaliation) |

Plaintiff *The Koala* brings this First Amendment case against officers of the University of California, San Diego ("UCSD"), and the Associated Students of UCSD ("Student Government"), in their official capacities, and alleges as follows:

1                                    3:16-CV-01296-JM-BLM

## INTRODUCTION AND NATURE OF THE ACTION

1.     This case seeks to prevent Defendants from continuing to violate the First Amendment rights of student organizations such as *The Koala*.

2.     The Student Government unconstitutionally ~~eliminated~~disqualified student organizations that publish print newspapers from eligibility to seek funding ~~for publication of student print media while continuing to fund other~~ designed to support the speech ~~and activities~~ of student organizations while continuing to treat other student organizations as eligible to seek such funding.

3.     The Student Government engaged in unconstitutional viewpoint discrimination ~~by eliminating funding for publication of~~and retaliation by disqualifying student organizations that publish print ~~media~~newspapers for eligibility to seek funding because of the viewpoint of *The Koala*'s speech.

4.     *The Koala* seeks declaratory and injunctive relief to restore the ~~process for~~eligibility of student organizations that publish print newspapers to seek ~~and obtain~~ funding for publication of ~~student print media and prevent Defendants from continuing~~such newspapers, subject to ~~violate the First Amendment~~otherwise valid procedures and requirements.

## JURISDICTION AND VENUE

5.     The Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the United States Constitution and 42 U.S.C. § 1983.

6.     The Court may grant declaratory and injunctive relief for constitutional violations pursuant to 28 U.S.C. § 2201 and Federal Rules of Civil Procedure 57 and 65.

7.     Venue is proper in this district under 28 U.S.C. § 1391(b) because the events that give rise to this action occurred within this district.

8.     The Court has personal jurisdiction over Defendants, who reside in or have substantial, continuing, and systematic contact with the state of California.

## PARTIES

9. *The Koala* is an unincorporated, expressive student association and registered student organization at UCSD.

10. The University of California ("UC") is a public trust administered by the Regents of the University of California. Calif. Const., Art. IX, § 9. The President of the University of California serves as the executive head of the University. Board of Regents Standing Order 100.4(a). The Regents have created several UC campuses, including UCSD.

11. Defendant Pradeep Khosla is the Chancellor of UCSD and responsible for the organization, operation, and internal administration of the campus. Board of Regents Standing Order 100.6(a).

12. In particular, the Chancellor is responsible for ensuring that the allocation of funds by UCSD's student government "is consistent with legal requirements and University policies and procedures." UC Policy on Student Governments ¶ 67.00. (true and correct copy attached hereto as Exhibit 1).

13. The Student Government is the official student government for UCSD and an official unit of the University of California exercising authority over student affairs with powers delegated by the Regents, President, and Chancellor. UC Regents Policy 3301. (true and correct copy attached hereto as Exhibit 2).

14. Defendant Daniel Juarez is the President of the Student Government. The President is the chief executive officer of the Student Government. Student Government Constitution, Art. VI, §§ 1(a), 1(k).

15. Defendant Justin Pennish is the Financial Controller of the Student Government. The Financial Controller is responsible for the Student Government's allocation and expenditures of funds, including but not limited to determinations of eligibility for funding of speech by registered student organizations from revenue generated by campus activity fees. *Id.* § 4(b).

16. All Defendants are sued in their official capacities for declaratory and injunctive relief. The statements of UCSD administrators, Student Government

3:16-CV-01296-JM-BLM

officials, and other individuals discussed in this complaint are taken from public records disclosed by UCSD to Plaintiff under the California Public Records Act, or from other official records of UCSD or the Student Government.

## FACTUAL ALLEGATIONS

**A. University of California policy establishes a limited public forum for supporting student speech on a wide range of issues, with clear disclaimers of official endorsement and a process to issue pro rata refunds to students who object to certain speech.**

17. Apart from tuition, the University of California collects fees for various purposes, including "a student body fee whenever requested to do so by at least a majority vote of the student body concerned." UC Regents Policy 3302. (true and correct copy attached hereto as Exhibit 3).

18. Pursuant to applicable policies and as approved by student referendum, UCSD collects "compulsory campus-based student fees," also known as campus activity fees, from its students.

19. "Compulsory campus-based student fees are fees levied at individual campuses that must be paid by all registered students to whom the fee applies." UC Policy on Compulsory Campus-Based Student Fees ¶ 81.10 (true and correct copy attached hereto as Exhibit 4).

20. UCSD allocates campus activity fee income to the Student Government, which dedicates a portion of that income to support the speech of registered campus organizations, which are generally eligible to seek funding to support their speech.

21. The "University'sUniversity's purposes for student governments" include providing "financial and other tangible support for student activities and organizations on a viewpoint-neutral basis … in order to foster a sense of community and to further discussion among students of the broadest range of

ideas." UC Policy on Student Governments ¶ 61.13. (true and correct copy attached hereto as Exhibit 1).

22. The "University's educational purposes are served" when student governments fund the speech of registered campus organizations "to stimulate on-campus discussion and debate on a wide range of issues from a variety of viewpoints." UC Policy on Compulsory Campus-Based Student Fees ¶ 86.20. (true and correct copy attached hereto as Exhibit 4).

23. Under university policy, "specific reallocation decisions for the support of Registered Campus Organizations and Registered Campus Organization-related programs and activities from compulsory campus-based student fees … must be viewpoint-neutral in their nature; that is, they must be based upon considerations which do not include approval or disapproval of the viewpoint of the Registered Campus Organization or any of its related programs or activities." UC Policy on Compulsory Campus-Based Student Fees ¶ 86.30. (true and correct copy attached hereto as Exhibit 4).

24. The Student Government has adopted rules for the student organization funding process. Standing Rules, Title II, § 10.4 (formerly Title V, §§ 2.4, 2.5).

25. A registered student organization under the Standing Rules is a registered campus organization under University of California policy.

26. Under the rules, "[a] student organization must be a registered student organization to request funding through a student organization funding process," and "[t]he allocation of funds to student organizations does not represent an endorsement or the official position of the ASUCSD, the University of California, or the Regents of the University of California." Standing Rules, Title II, §§ 10.5(a), 10.5(d) (formerly Title V, §§ 2.5(a), 2.5(f)).

27. In particular, print media funded by the Student Government were required to include a disclaimer stating, "The publication may have been funded in

part or in whole by funds allocated by the ASUCSD.  However, the views expressed in this publication are solely those of <publication's name here>, its principal members and the authors of the content of this publication.  While the publisher of this publication is a registered student organization at UC San Diego, the content, opinions, statements and views expressed in this or any other publication published and/or distributed by <publication's name here> are not endorsed by and do not represent the views, opinions, policies, or positions of the ASUCSD, GSAUCSD, UC San Diego, the University of California and the Regents or their officers, employees, or agents.  The publisher of this publication bears and assumes the full responsibility and liability for the content of this publication." Former Standing Rules, Title V, § 2.5(l)(2).

28.     The Student Government published a Funding Guide describing viewpoint-neutral conditions for student organizations to receive funding. It contains the same disclaimer for student media as the Former Standing Rules. (true and correct copy attached hereto as Exhibit 5).

29.     Taken together, University of California policy, the Standing Rules, and Student Government practices establish a limited public forum for fundingthat is designed to fund the speech of registered student organizations without regard to viewpoint, subject to otherwise valid procedures and requirements.

30.     Although the Student Government provideshas provided various channels for funding various forms of speech within that forum, the disbursement of campus activity fee income is and at all relevant times has been a single forum for supporting student speech.

31.      In addition to funding print media published by Plaintiff and other organizations, the Student Government has consistently funded a wide range of expression by student organizations.  For example, according to its official records, the Student Government funded the following forms of student speech in fall 2015, among others:

a. African Student Association:  African Theme Thanksgiving;

b. Chabad at UCSD:  Learning with Chabad;

c. College Democrats at UCSD:  Political Rhetoric Discussion, City Council Primary Strategizing, Primary Election Showdown, Democratic Debate Watch Party, College Democrats at UCSD;

d. Indian Student Association:  Diwali;

e. Multi-Asian Student Association:  Asian Night Market & Cultural Movie Night;

f. Muslim Student Association:  general meeting;

g. SAJE & Union of Jewish Students:  "Learning Events" that educate "UCSD Students about Jewish law and ideology";

h. SangamSD:  Fall Banquet 2015, to "educate those in attendance about South Asian culture";

i. Triton Art:  Artist Talk; and

j. United Jewish Observance:  Shabbat Week.

32.    University policy authorizes students to obtain pro rata refunds of their campus activity fees if they object to funding particular speech.  "A student government in consultation with the campus, or a campus with the concurrence of the student government, may at its discretion establish and administer a mechanism providing for a pro rata refund to any student of that portion of his or her compulsory campus-based student fees that has been allocated by a student government or other campus entity to support a particular Registered Campus Organization or Registered Campus Organization-related program or activity."  UC Policy on Registered Campus Organizations ¶ 70.83. (true and correct copy attached hereto as Exhibit 6).

33.    The Student Government has adopted such a mechanism.  "Any member of the ASUCSD may request a pro-rata refund of a portion of the Campus Activity Fee for any allocation for political, religious, and ideological grounds.  The

Financial Controller has the authority to judge the veracity and to approve all such requests." Standing Rules, Title II, § 4.7(a)(3) (formerly Title V, § 1.7(a)(3)).

34. According to its Executive Budget, the Student Government collected $3,704,964 in campus activity fees during the 2015-2016 school year. It allocated $432,236 to fund student organizations, with only $25,000 earmarked for print media organizations. Therefore, student print media funding constituted only 0.7 percent of the Student Government's budget and 5.7 percent of student organization funding.

**B.** ***The Koala* is a registered student organization with a history of publishing controversial speech that has drawn the ire of the Student Government and UCSD administration.**

35. *The Koala* is and at all relevant times has been a registered student organization at UCSD.

36. *The Koala* has published a satirical student newspaper at UCSD since 1982, and it has consistently sought, qualified for, and received campus activity fee funding from the Student Government, as have other student organizations.

37. *The Koala* isAs with other student print publications, *The Koala* serves the University of California's declared purpose of the forum for funding registered student organizations by stimulating on-campus discussion and debate on a wide range of issues from a variety of viewpoints.

38. Through art, cartoons, graphics, and text, *The Koala* regularly publishes content addressing topical issues of public concern, including but not limited to politics, gender, race, drug use, educational policy, student debt, freedom of speech, university policy, and funding of sports programs.

37.39. *The Koala* has been published several times each academic year. The typical print run for each issue runs to approximately 3000-5000 copies. It is also published on the internet at http://thekoala.org/. Each issue supported by campus activity fees has contained the disclaimer required by the Standing Rules.

40.   *The Koala* publishes a print newspaper because print is an important medium providing unique opportunities for expression and interaction not available through digital publication.

41.   *The Koala* publishes artwork as well as text, and typically at least half of each issue is devoted to artwork.

42.   *The Koala* is the only student newspaper at UCSD that currently publishes a cover devoted to artwork.

43.   *The Koala* publishes in an 11-inch by 17-inch format much more conducive to the publication of artwork than digital display on a website.

44.   In a print format such as that used by *The Koala*, artists can be certain their work will be viewed in the size, format, shading, color, and proportions they intended.

45.   On a website or other digital display, by contrast, artists have far less control over how their work will be viewed, because they cannot control the size or proportions of the screen, brightness, tone, shading, color, or other aspects of the display.

46.   For example, an artist's ability to communicate through visual representation is significantly impaired when a viewer of the artist's work sees it on a small screen such as that of a smartphone, tablet, or other small computer, as is common for online viewing.

47.   At UCSD, student artists have sought to participate in *The Koala* because of the unique opportunities it presents for publication and distribution of their creative work on campus.  For example, an artist left the UCSD Guardian newspaper to join *The Koala* because it offered greater opportunities for the artist's creative work to appear in print.  The staff of *The Koala* now comprises more artists than writers.

38.48. *The Koala* distributes each issue of its newspaper by hand for free on the UCSD campus.

9                    3:16-CV-01296-JM-BLM

49.    *The Koala* publishes a print newspaper and distributes it by hand because such printing and distribution represent a unique opportunity for expression, interaction, and debate with members of the UCSD student body and community.

50.    Without a print newspaper to distribute, there is no opportunity for expression through personal interaction and debate with members of the UCSD student body and community.

51.    *The Koala* distributes its newspaper by hand specifically to create unique opportunities for speech through personal interaction, debate, and engagement with the UCSD student body and community.

52.    Through in-person distribution by hand on the UCSD campus, *The Koala* has much greater opportunities to reach its intended audience of UCSD students than it does through online publication, in which it cannot be certain that any UCSD students will see it.

53.    As a print newspaper distributed by hand that publishes artwork, *The Koala* fills a unique niche on the UCSD campus, precisely because it offers opportunities for creativity, expression, and engagement that are unavailable online.

39.54. The UCSD administration and Student Government have consistently condemned *The Koala* due to the viewpoint of its speech.

40.55. The UCSD administration and Student Government have made multiple attempts to terminate funding for publication of *The Koala* on the basis*The Koala*'s eligibility for campus activity fee funding because of its viewpoint.

41.56. In 2002, UCSD unsuccessfully attempted to revoke *The Koala*'s registration as a student organization and thus its access toeligibility for funding because one of its members allegedly took photographs at a public meeting hosted by another student organization, and *The Koala* subsequently published them in a manner that mocked the other organization.

42.57. In 2010, then-President of the Student Government Utsav Gupta suspended all student print media funding after *The Koala* broadcast certain content on UCSD's student-run television channel. The Student Government then explored means of defunding *The Koala* before resuming funding for student print media.

43.58. As Mr. Gupta wrote on February 25, 2010, "The Koala has long since been a controversial publication at UC San Diego and is primarily funded by our student fees. I do not believe we should continue funding this organization with our fees. We must develop effective policies to ensure that our fees do not go to support the hateful speech that targets members of our community."[1]

44.59. On March 12, 2010, then-Vice Chancellor for Student Affairs Penny Rue wrote that Mr. Gupta "has worked tirelessly to find a way to disestablish the AS relationship with the Koala, but a concerted effort by other media groups and the spotlight of upcoming elections has hampered his efforts. I cannot tell you how bad a black eye it is for the University that we do not seem to have the power to cut our ties to this body."

45.60. A few days later, on March 17, 2010, Assistant Vice Chancellor of Student Life Gary Ratcliff wrote to Ms. Rue and a faculty member, alluding to purportedly "legally sound methods that … I have advised student leaders to consider in order to discontinue student government funding of the Koala."

**C.** **Immediately after *The Koala* published a controversial ~~parody~~satire on a topical issue of public concern, the Student Government ~~eliminated all funding for~~disqualified student organizations that print ~~media~~newspapers from eligibility to seek funding but continued to fund other forms of speech.**

[1] Except as otherwise noted, the statements of officials and individuals quoted in this Complaint are taken from public records obtained from UCSD, true and correct copies of which are attached hereto as Exhibit 1.

46.61. On November 12, 2015, UCSD received a complaint about *The Koala* stating, in part, "The Koala is a newspaper that is solely meant to cause hatred…. Stop the Koala."

47.62. In response, Vice Chancellor for Equity, Diversity, and Inclusion Becky Pettit emailed Vice Chancellor for Student Affairs Juan Gonzalez, Associate Chancellor and Chief of Staff Clare Kristofco, and other UCSD officials: "I think this crosses the 'free speech' line and I'd like to explore ways we can do something about it.  I know it's a delicate undertaking."

48.63. Ms. Kristofco replied, "We have been down this path many times over the years for even more egregious issues."

49.64. In the same email thread, in response to a suggestion from campus counsel to meet and "discuss the legal landscape," Ms. Pettit wrote, "I'd like to think creatively about how we can address this."

50.65. On November 16, 2015, *The Koala* published an article entitled "UCSD Unveils New Dangerous Space on Campus" that satirized the concepts of "trigger warnings" and "safe spaces."  *See* http://thekoala.org/2015/11/16/ucsd-unveils-new-dangerous-space-on-campus/.

51.66. However offensive or outrageous it may have been, the article remains protected speech on topical issues of public concern, including but not necessarily limited to the nature, purpose, and appropriateness of trigger warnings and safe spaces on college and university campuses.

52.67. Numerous individuals submitted "Bias Incident Report Forms" to UCSD complaining about the viewpoint of *The Koala* and the article in particular, making statements such as:

    a. "The campus newspaper The Koala published an explicitly racist article mocking safe spaces….  The university needs to stop funding the Koala, and stop endorsing it."

3:16-CV-01296-JM-BLM

b. "The newspaper mocks safe spaces, and other resources used for students who have had and are continuing to have experiences being victimized such as CARE.  It propagates insensitive mindsets with its sexist and racist comments masked under cruel humor.  Screen works to make sure that there is no propagation of these attitudes."

c. "Last night they released an article on thekoala.org that mocked students' need for safe spaces, and included allusions to sexual violence and racist acts….  I would like to see UCSD dismantle The Koala immediately."

d. "The Koala, titled 'UCSD Unveils New Dangerous Space on Campus,' promotes hate speech and perpetuates racism and sexism. UCSD should have no place or space for such discrimination….  Defund and shut down The Koala."

e. "Pull the funds, and make them turn to personal donations if they want to continue this nonsense.  They have the UC stamp/icon on the paper.  UCSD already has a bad racial climate and this is an obvious contributor that can be eradicated."

f. "In my research of The Koala's history, funding was pulled from the paper by an AS vote.  Why can we not renew that vote and decide against the funding?"

g. "I would like the University to shut down the koala newspaper and the creators of the newspaper should be punished by their college deans."

h. "The Koala newspaper is disturbing, sexist, racist, and homophobic. How can something like this be present at an 'inclusive' campus? The Koala should be more inclusive or be banned from being published."

i. "Stop the UCSD students who are editors and publishers of the Koala newspaper from continuing to distribute this newspaper on campus.

It is damaging to the self-esteem and overall well-being of many UCSD students on campus."

j. "The University needs to immediately take the initiative to end any hate speech, actions, or crimes that offend any groups represented on campus…. I demand an end to this newspaper."

k. "Please set up a system for administrative approval of the content published in the magazine."

l. "The Koala has recently published a new newsletter that is ruining the campus climate and making me and other students feel unsafe at this university…. I believe the administration needs to shut down the Koala as they have notoriously been discriminating against minorities since their conception."

m. "The latest article in the Koala is blatantly offensive and preaches a single point of view…. It is evident that UCSD is not overseeing this hateful rhetoric. Therefore, the students need control to hold individuals accountable."

n. "Find ways to address the Koala by defunding it, finding those complicit in writing, funding, supporting it and putting them on blast for breaking sanctions that make the campus climate cold and negative."

o. "Defund The Koala."

53.68. Lori Chamberlain, a UCSD official, informed Ms. Pettit, Mr. Gonzalez, Ms. Kristofco, and Mr. Ratcliff by email on November 17, 2015, "I will be forwarding a number of 'Bias Incident Report Forms' that we have received regarding the Koala issue." Ms. Chamberlain then forwarded each of the above complaints to Ms. Pettit, Mr. Gonzalez, Ms. Kristofco, and Mr. Ratcliff.

14                    3:16-CV-01296-JM-BLM

54.69.Ms. Chamberlain emailed Ms. Pettit, Mr. Gonzalez, Ms. Kristofco, and Mr. Ratcliff later on November 17, 2015: "We do not typically receive so many reports regarding a single issue."

55.70.As Ms. Chamberlain wrote to a student who completed a "Bias Report Incident Form" against *The Koala*, "We have forwarded your complaint along with others to the Vice Chancellor of Equity, Diversity and Inclusion and to the Vice Chancellor of Student Affairs.  I know they will be discussing what further action could be taken."

56.71.On November 18, 2015, a UCSD student emailed Mr. Gonzalez directly about *The Koala*:  "Knowing that my school is funding such a heinous magazine is not okay and I stand by my fellow students to get it off this campus. Please please cease funding for this awful publication."

57.72.After publication of the "Dangerous Space" article and numerous complaints about its viewpoint, UCSD officials discussed how to respond by email, telephone, or in-person meeting.

58.73.On November 18, 2015, UCSD released a "Statement Denouncing Koala Publication From UC San Diego Administration" from the Chancellor and other officials.  The statement read, "We, the UC San Diego administration, strongly denounce the Koala publication and the offensive and hurtful language it chooses to publish.  The Koala is profoundly repugnant, repulsive, attacking and cruel.  The UC San Diego administration does not provide any financial support for the Koala, and we call on all students, faculty, staff and community members to join us in condemning this publication and other hurtful acts."

59.74.In an email on the same date, Vice Chancellor for Resource Management and Planning Gary Matthews stated, "Please note Koala get[s] no University funding[.]  The Associated Students find [sic] them.  Pressure should [be] brought to that organization to end the madness."

15                           3:16-CV-01296-JM-BLM

60.75.On information and belief, UCSD officials communicated with then-Student Government president Dominick Suvonnasupa or other Student Government officials to discuss options or proposals for defundingdiscriminating or retaliating against *The Koala*, including but not necessarily limited to the elimination ofdisqualification of student organizations that print newspapers from eligibility to seek campus activity fee funding for publication of student print media.

61.76.During the evening of November 18, 2015, the Student Government Council held a regular meeting. According to the Student Government's official recordcontemporaneous published synopsis of the meeting, which is (true and correct copy attached to the Request for Judicial Notice filed herewith,as Exhibit 7), students objected to *The Koala* as follows:

    a. "I speak on the recent issues of Koala. I don't know why this publication is to remain on campus and I would like to know where AS stands on this issue."

    b. "There is something to be said about free speech. We're not saying to shut the Koala down but we don't want student funds to support something that feels unsafe."

62.77.Mr. Gonzalez attended the Student Government meeting and read UCSD's official statement concerning *The Koala* into the record.

63.78.At the meeting, Defendant Juarez, then serving as the Student Government's Associate Vice President of Equity, Diversity, and Inclusion, made a motion was made to delete former Title V, § 2.4(d)-(f) of the Standing Rules, which provided the administrative mechanism for funding publication ofand thus disqualify student print media.organizations that print newspapers from eligibility to seek campus activity fee funding that is designed to support the speech of student organizations ("Media Disqualification"). The motion Media Disqualification did

not affect the eligibility of any other student organization to seek funding for any other form of student speech.

79. The Media Disqualification was not listed on the previously published agenda for the Student Government meeting of November 18, 2015.

80. In advance of that meeting, Tristan Britt, then Financial Controller of the Student Government, had proposed that the Student Government adopt the "Media Funds Fiscal Approval Realignment Act," which would have maintained the print media funding levels stipulated in the 2015-2016 Student Government Executive Budget, but in an effort to reduce administrative burdens it would have streamlined the administrative process for approving funding requests for student print publications.

81. At the Student Government's Legislative Committee meeting, held immediately before the general meeting on November 18, 2015, the Legislative Committee discussed the Media Funds Fiscal Approval Realignment Act.

82. In the Legislative Committee meeting, Defendant Juarez stated that instead of supporting the Media Funds Fiscal Approval Realignment Act, he intended to make a motion in the general meeting for the Student Government to adopt the Media Disqualification.

83. On information and belief, this was the first time any committee, arm, or part of the Student Government discussed the idea of terminating the eligibility of student organizations to seek funding for print publications.

84. During the Student Government's general meeting of November 18, 2015, Defendant Juarez spoke in favor of the Media Disqualification, and his advocacy of the motion focused on disagreements with the content of *The Koala*. Juarez stated that the Media Disqualification was necessary because *The Koala* was harmful to campus climate and underrepresented communities.

64.85. According to the Student Government's official recordcontemporaneous synopsis of the meeting, which is attached to the Request

17                3:16-CV-01296-JM-BLM

~~for Judicial Notice filed herewith~~hereto as Exhibit 7, Student Government officials made comments such as:

   a. "President Suvonnasupa:  The question is do we fund media at all?  It expresses an opinion of that group.  Should student fees be used to fund these events?  There is a difference between print and event in my opinion."

   b. "AVP Juarez:  Objectivity does not exist.  I'm really upset what has come out of this publication."

   c. "Senator Roberts:  We nix them now does not mean that others who are funded by this cannot find alleyways to find different ways of funding.  But we should nix this media funding now."

   d. "Senator Pennish:  I think alternate funding needs to be secured.  It shouldn't be to pull funding away because some groups benefit and are positive to the campus."

   e. "Senator Hunter:  Is there a way to receive a list of current orgs who use this funding?  By cutting media funding, we will also be cutting other publication.  To say it was allocated in funding and back out, it won't look good on our point."

   f. "Senator Vu:  Campus climate has gotten so bad across the country.  I feel like this should happen so we can represent our constituents."

   g. "VP CA Valdivia: I am open to finding alternative funding. It's been talked about before and nothing has been done. Something should be done now."

   h. "President Suvonnasupa: It has to be looked as a whole. We aren't saying we are limiting free speech. Everything printed on AS Funds is AS responsibility.  Everything printed, good or bad, is partially our responsibility."

65.86. The motionMedia Disqualification was then approved, with an official statement that "standing rules supersede the Funding Guide with respect to media funding.  AS does not fund printed media."

66.87. The approval of the motionMedia Disqualification resulted in eliminationdisqualification of student organizations that publish newspapers from eligibility to seek campus activity fee funding for student print media but not other forms of speech or activities by registered that is designed to support the speech of student organizations, but it did not affect the eligibility of any other student organization to seek funding for other forms of speech or expressive conduct.

88.    Although the motionMedia Disqualification was in form directed at terminatingeligibility to seek funding for allany student print media, the motionMedia Disqualification and its proposal and approval were in fact substantially motivated by discrimination or retaliation against *The Koala* because of the viewpoint of *The Koala'*sits speech.

67.89. *The Koala* is informed and believes, and on that basis alleges, that in the aftermath of the Media Disqualification, Student Government officials expressed to the various UCSD college councils that the Student Government enacted the Media Disqualification in order to deprive *The Koala* of eligibility to seek campus activity fee funding.

68.90. On November 19, 2015, Mr. Ratcliff emailed various UCSD officials, including Mr. Gonzalez, Ms. Pettit, and Ms. Kristofco, stating that "the Associated Students (AS) voted to discontinue funding publications of media student organizations.  Students on campus have expressed their disapproval of the Koala and Associated Students (AS) funding of student organization publications….  AS adopted a blanket restriction on a type of student organization expenditure it will not fund.  For example, some student governments do not accept funding requests for equipment, travel, and food.  The student government at SDSU does not accept requests for publications.  Last night, AS voted to do the same."

69.91. Mr. Gonzalez forwarded the message to Defendant Khosla and other UCSD officials, noting, "I wanted to be certain you were aware of this vote by AS last night."

70.92. Copying the Chancellor and others in reply, Suresh Subramani, Executive Vice Chancellor of Academic Affairs, directed Mr. Gonzalez, "Let's not ditch the good ones worthy of this funding and work actively on finding ways to encourage and help them financially.  I know you are working on this."

71.93. The Standing Rules have been amended to state, "The Standing Rules supersede the Funding Guide with respect to media funding.  AS does not fund printed media."  Standing Rules, Title II, § 10.4(f).

72.94. The official records of the Student Government show that it has continued to fund other forms of student speech on various topics after eliminating student media funding adopting the Media Disqualification, for example:

    a. Academic Integrity Peer Educators:  Honoring Integrity at UCSD;

    b. Acts 2 Fellowship:  Bronanza (to "foster community and Christian values");

    c. Acts 2 Fellowship:  A2F Sisters' Night (event where "women can get to know each other, learn about the bible and also share some laughs");

    d. Alpha Epsilon Pi:  AEPetting Zoo (to "learn about different Jewish organizations");

    e. Alpha Epsilon Pi:  Hunger Relief;

    f. American Chemical Society Student Affiliates:  Finals Study Jam;

    g. Asian and Pacific Islander Student Alliance:  21st Annual Talent Show;

    h. Brazilian Student Association:  Brazilian-Israeli Culture Night;

    i. Cal-Animage Beta:  AnimeFest;

    j. Chabad at UCSD:  Learning with Chabad;

20                           3:16-CV-01296-JM-BLM

k. Cognitive Science Student Association: 2016 National Cognitive Science Conference at UC San Diego;

l. College Democrats at UCSD:  Presidential Primaries Update;

m. Counseling and Psychological Services Peer Education Program: Sweet Dreams ("to promote healthy sleeping, CAPS services, and general mental health awareness on our campus and in our community");

n. Indian Student Association:  Bollywood Night: A Night Among The Stars;

o. Japanese Student Association:  JSA + NSU 8th Annual Matsuri Festival;

p. Muslim Student Association:  general body meeting;

q. Producers & Remixers Organization:  PRO Presents ("teaching the art of music production"); and

r. Students Against Mass Incarceration: general body meeting.

95.  *The Koala* is informed and believes and on that basis alleges that after adopting the Media Disqualification, the Student Government continues to provide financial support for publication of *The Collective Voice,* a print newspaper that is described as "a student-run, student-initiated publication of UCSD's SPACES, the Student Promoted Access Center for Education and Service."

~~73.~~96. Until the Student Government ~~eliminated student media funding, *The Koala* satisfied all conditions for campus activity fee funding and in fact~~adopted the Media Disqualification, *The Koala* regularly sought, qualified for, and received campus activity fee ~~funds~~funding.  For example, during the fall, winter, and spring quarters of the 2014-15 academic year, it received $750, $713.40, and $1000, respectively.  For the fall quarter of the 2015-16 academic year it received $634.20.

~~74.~~97. Shortly before the meeting at which the Student Government ~~terminated student media funding~~adopted the Media Disqualification, *The Koala*

21                              3:16-CV-01296-JM-BLM

had been approved for $452.80 in funding, but the Student Government did not disburse those funds to *The Koala*.

75.98. Because of the Student Government's eliminationadoption of student media fundingthe Media Disqualification, *The Koala* is no longer eligible to receiveseek campus activity fee funds for printing its newspaper and in fact no longer receives such funds.

76.99. The print costs to publish an issue of *The Koala* vary somewhat depending on the number of pages and number of copies and whether color is used, but they typically run to several hundred dollars.

77.100. For example, *The Koala* has paid for the printing of two issues without Student Government funding:  an 8-page issue in fall 2015 that cost $423.80, and an 8-page issue in spring 2016 that cost $384.20.

78.101. The elimination of student media fundingThe Media Disqualification has materially hindered *The Koala*'s ability to publish, preventing it from publishing a planned issue during the winter quarter of the 2015-16 academic year and limiting it to three issues instead of the planned six during the current academic year.

102.   Although *The Koala* sought and obtained a certain amount of advertising revenue following adoption of the Media Disqualification, advertising revenue has since dropped, as various businesses have declined to renew their advertising.  *The Koala* is unable to obtain sufficient advertising revenue to continue publishing on the schedule and frequency with which it did before the Media Disqualification.

79.103. UCSD has refused to allow *The Koala* to participate in Crowdsurf, a crowdfunding platform for student and campus projects, due to the UCSD administration's condemnation of *The Koala*.

80.104. *The Koala* has been unable to obtain funding from any of UCSD's constituent colleges.

3:16-CV-01296-JM-BLM

81.105.    Defendants have violated, chilled, deterred, and infringed *The Koala*'s right to engage in protected speech.

82.106.    Defendants have caused and are causing irreparable harm to *The Koala* due to interference with its First Amendment rights to freedom of press and freedom of speech.

83.107.    An actual controversy has arisen and now exists between *The Koala* and Defendants regarding the question whether Defendants violated and are continuing to violate *The Koala*'s First Amendment rights by categorically refusingdisqualifying *The Koala* and other student print publications from eligibility to allocateseek campus activity fee funding for publication of print newspapers and expelling it from a forum designed to *The Koala*support the speech of registered student organizations.

**FIRST CLAIM**
**42 U.S.C. § 1983**
**(First Amendment: Freedom of the Press)**

84.108.    The allegations of paragraphs 1 to 83107 above are incorporated by reference as though set forth fully herein.

85.109.    Defendants violated and are continuing to violate the Free Press Clause of the First Amendment by categorically refusingadopting and enforcing the Media Disqualification and thus excluding *The Koala* and other student print publications from eligibility to provideseek campus activity fee funding for the publication of student print media by *The Koala* or othersnewspapers, while continuing to fundtreat other student organizations as eligible to seek campus activity fee funding for other forms of speech and activity by student organizationsexpressive conduct.

**SECOND CLAIM**
**42 U.S.C. § 1983**
**(First Amendment: Freedom of Speech –Expulsion from Forum)**

86.110.    The allegations of paragraphs 1 to 85109 above are incorporated by reference as though set forth fully herein.

111.   Under university policy, practice, and conduct, the program making registered student organizations eligible for allocation of campus activity fee funding at UCSD is a single forum for the speech of all such organizations.

112.   As a registered student organization, *The Koala* is an entity and speaker of similar character to other registered student organizations in light of the declared purpose of the forum, and as a result, it violates the Free Speech Clause of the First Amendment to expel *The Koala* from a forum designed for the speech of such organizations.

113.   As a registered student organization that stimulates on-campus discussion and debate on a wide range of issues from a variety of viewpoints, *The Koala*, like other student print publications, serves the university's declared purpose for that forum.  The Media Disqualification is thus inconsistent with the university's own purpose for the forum.

114.   In light of the university's declared purpose for the forum, the Media Disqualification violates the Free Speech Clause of the First Amendment, because it is unreasonable under the First Amendment to expel *The Koala* and other student print publications from a forum designed for the speech of student organizations by disqualifying them from eligibility to seek campus activity fee funding, while continuing to treat other student organizations as eligible to seek such funding for other forms of speech and expressive conduct.

115.   Defendants violated and are continuing to violate the Free Speech Clause of the First Amendment by adopting and enforcing the Media Disqualification and excluding *The Koala* and other student print publications from eligibility to seek campus activity fee funding.

**THIRD CLAIM**
**42 U.S.C. § 1983**
**(First Amendment: Freedom of Speech–Viewpoint Discrimination)**

116.   The allegations of paragraphs 1 to 115 are incorporated by reference as though set forth fully herein.

117.   The proposal, adoption, and enforcement of the Media Disqualification were and continue to be substantially motivated by discrimination against the viewpoint of the speech published by *The Koala*.

~~87.~~118.    Defendants violated and are continuing to violate the Free Speech Clause of the First Amendment by ~~categorically refusing~~enforcing the Media Disqualification and excluding *The Koala* from eligibility to ~~provide~~seek campus activity fee funding ~~for the publication of student print media~~ because of the viewpoint of *~~The Koala's~~*the speech~~.~~ published by *The Koala*.

**FOURTH CLAIM**
**42 U.S.C. § 1983**
**(First Amendment: Freedom of Speech–Retaliation)**

119.   The allegations of paragraphs 1 to 118 above are incorporated by reference as though set forth fully herein.

120.   *The Koala* has engaged in the constitutionally protected speech of publishing and distributing a print newspaper.

121.   *The Koala* historically received the valuable benefit of eligibility to seek campus activity fee funding for printing and distributing a student newspaper.

122.   The Media Disqualification eliminated *The Koala*'s eligibility to seek such funding and has chilled and impaired *The Koala*'s ability to engage in its constitutionally protected speech of publishing and distributing a print newspaper.

123.   A substantial motivating factor for the proposal, adoption, and enforcement of the Media Disqualification was and remains an intent to chill or impair *The Koala*'s speech.

124.   *The Koala* is informed and believes, and thereon alleges, that officials from the Student Government and UCSD administration oppose *The Koala*'s editorial viewpoint, intended to prevent *The Koala* from expressing its editorial viewpoint, formulated a plan to carry out that intent, and implemented it in the form of the Media Disqualification.

125.    UCSD and Student Government officials attempted unsuccessfully to strip *The Koala* of eligibility to seek funding in 2002 and 2010 in response to its editorial viewpoint.

126.    In the aftermath of the Student Government's unsuccessful attempt to exclude *The Koala* from eligibility to seek funding in 2010, UCSD officials exchanged e-mails indicating that they had devised methods for student leaders to use in excluding *The Koala* from eligibility to seek campus activity fee funding. *The Koala* is informed and believes, and thereon alleges, that those officials are still employed by UCSD.

127.    UCSD officials responded to e-mails criticizing *The Koala*'s publication of its "Dangerous Spaces" article by indicating that the UCSD administration would discuss what steps to take in response to the article, and that the Student Government funds *The Koala* and should therefore be pressured to "end the madness."

128.    UCSD officials recognized that the "Dangerous Spaces" article generated more complaints than most of *The Koala*'s articles, discussed means to disqualify *The Koala* from eligibility to seek campus activity fee funding, and on information and belief, communicated the proposal for the Media Disqualification to Student Government officials and encouraged, suggested, or directed that the Student Government adopt the Media Disqualification.

129.    The Defendants' withdrawal of *The Koala*'s eligibility to seek campus activity fee funding coincided with statements by numerous members of the Student Government and UCSD administration condemning *The Koala*'s content and editorial viewpoint.

130.    At the Student Government meeting on November 18, 2015, the Media Disqualification was an impromptu motion not listed on the agenda and was steered by commentary from numerous Student Government officials condemning *The*

26                              3:16-CV-01296-JM-BLM

*Koala*'s editorial viewpoint and arguing that the Student Government should no longer fund it.

131.  On November 19, 2015, various UCSD administration officials exchanged e-mails suggesting that they were complicit in a strategy to deprive *The Koala* of eligibility to seek campus activity fee funding, and expressing a desire to devise a mechanism allowing other student print publications to remain eligible for such funding.

132.  *The Koala* is informed and believes, and on that basis alleges, that in the aftermath of the Media Disqualification, Student Government officials expressed to the various UCSD college councils that the Student Government adopted the Media Disqualification in order to deprive *The Koala* of eligibility to seek campus activity fee funding.

133.  *The Koala* subsequently applied to UCSD Crowdsurf for fundraising assistance, but was informed that the administration's statement condemning *The Koala* precluded UCSD Crowdsurf from assisting *The Koala*.

134.  The proposal, adoption, and enforcement of the Media Disqualification were and continue to be substantially motivated by retaliation against *The Koala* because of its speech.

135.  Defendants violated and are continuing to violate the Free Speech Clause of the First Amendment by enforcing the Media Disqualification and excluding *The Koala* from eligibility to seek campus activity fee funding because of retaliation against *The Koala* because of its speech.

136.  In the event the Court finds eligibility for campus activity fee funding to print student newspapers is a forum separate and apart from eligibility for such funding to support other forms of speech by registered student organizations, contrary to Plaintiff's allegations above, the Media Disqualification resulted in an unconstitutional closure of that forum based on retaliation against protected speech.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment against Defendants as follows:

1.    Preliminarily and permanently enjoining Defendants and their officers, agents, servants, employees, and attorneys, and anyone in active concert or participation with any of the foregoing persons, from ~~categorically refusing~~enforcing the Media Disqualification and excluding *The Koala* from eligibility to ~~provide~~seek campus activity fee funding for the publication of student media, subject to otherwise valid procedures and requirements, or otherwise preventing, impeding, or otherwise interfering with Plaintiff's First Amendment rights to freedom of the press and to speech;

2.    Declaring Defendants' conduct to be unlawful;

3.    Awarding Plaintiff costs and attorney fees as authorized by Fed. R. Civ. P. 54, 42 U.S.C. § 1988, and/or any other applicable law;

4.    Awarding other such relief as the Court deems proper.

Dated: ~~June 17~~November 15, 2016                Respectfully submitted,

By:   **s/David Loy**
David Loy
davidloy@aclusandiego.org

Ryan T. Darby
Attorneys for Plaintiff
darby@darby.law

**Formatted:** Indent: Left:  0", First line:  0.5"