SCHIFF HARDIN LLP
William J. Carroll (SBN 118106)
*wcarroll@schiffhardin.com*
Jean-Paul P. Cart (SBN 267516)
*jcart@schiffhardin.com*
Matthew W. Callahan (SBN 307782)
*mcallahan@schiffhardin.com*
One Market, Spear Street Tower, Suite 3100
San Francisco, CA 94105
Telephone:   (415) 901-8700
Facsimile:   (415) 901-8700

Attorneys for Defendants
PRADEEP KHOSLA, DANIEL JUAREZ,
and JUSTIN PENNISH

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE KOALA, an unincorporated student association,<br><br>          Plaintiff,<br><br>     v.<br><br>PRADEEP KHOSLA, in his official capacity as Chancellor of the University of California, San Diego; DANIEL JUAREZ, in his official capacity as President of the Associated Students of the University of California, San Diego; and JUSTIN PENNISH, in his official capacity as Financial Controller of the Associated Students of the University of California, San Diego,<br><br>          Defendants. | Case No. 3:16-cv-01296-JM-BLM<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Case Filed:     May 31, 2016<br>Judge:             Hon. Jeffrey T. Miller<br>Hearing Date:  January 30, 2017<br>Hearing Time:  10:00 a.m. |

# TABLE OF CONTENTS

I.     **INTRODUCTION** .................................................................................1

II.    **THE SECOND AMENDED COMPLAINT** ...................................2

III.   **ARGUMENT** ...................................................................................2

     A.     Plaintiff's Suit Is Barred By The Eleventh Amendment. ........................2

     B.     Associated Students Had The Inherent Right To Close The Limited Public Forum For Campus Activity Fee-Funded Print Publications. ..................................................................4

         1.     The Relevant Forum Consists of Campus Activity Fee Funded Print Publications. ........................................4

         2.     Associated Students Was Entitled To Close The Forum. ........................................................................7

     C.     Even If Associated Students' Action Is Viewed As A Restriction Rather Than A Closure Of The Relevant Forum, There Is No First Amendment Violation. ................................8

         1.     Plaintiff's "Expulsion From Forum" Claim Fails To State A Claim For Relief. ..........................................9

         2.     Plaintiff's "Viewpoint Discrimination" Claim Fails To State A Claim For Relief. ......................................12

     D.     Plaintiff Fails To State A Claim Under The Free Press Clause. ............................................................................17

     E.     Plaintiff Fails To State A First Amendment Retaliation Claim ..............................................................................21

IV.   **CONCLUSION** ............................................................................25

i

# TABLE OF AUTHORITIES

## CASES

*ACLU v. Mineta*,
   319 F. Supp. 2d 69 (D.D.C. 2004) ........................................................................ 16

*Air Line Pilots Ass'n, Int'l v. Dep't of Aviation of Chicago*,
   45 F.3d 1144 (7th Cir. 1995) ................................................................................ 7

*Almengor v. Schmidt*,
   692 F. Supp. 2d 396 (S.D.N.Y. 2010) ................................................................ 17

*Almond Hill Sch. v. U.S. Dep't of Agric.*,
   768 F.2d 1030 (9th Cir. 1985) ............................................................................... 3

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents*,
   824 F.3d 858 (9th Cir. 2016) ............................................................................... 22

*Arkansas Writers' Project, Inc. v. Ragland*,
   481 U.S. 221 (1987) ............................................................................................ 19

*Assoc. Film Distrib. Corp. v. Thornburgh*,
   800 F.2d 369 (3d Cir. 1986) ................................................................................ 19

*Bloedorn v. Grube*,
   631 F.3d 1218 (11th Cir. 2011) ............................................................................. 7

*Blomquist v. Town of Marana*,
   501 F. App'x. 657 (9th Cir. 2012) ....................................................................... 25

*Bogan v. Scott-Harris*,
   523 U.S. 44 (1998) .............................................................................................. 23

*Brockett v. Spokane Arcades, Inc.*,
   472 U.S. 491 (1985) ............................................................................................ 19

*Capitol Square Review & Advisory Bd. v. Pinette*,
   515 U.S. 753 (1995) ............................................................................................ 14

*Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*,
   561 U.S. 661 (2010) ...........................................................10, 11, 13, 24

*City of Las Vegas v. Foley*,
  747 F.2d 1294 (9th Cir. 1984)........................................................................15

*Coal. to Defend Affirmative Action v. Brown*,
  674 F.3d 1128 (9th Cir. 2012)....................................................................4, 5

*Cogswell v. City of Seattle*,
  347 F.3d 809 (9th Cir. 2003)........................................................................12

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
  473 U.S. 788 (1985) ...................................................................5, 7, 12, 25

*Council 31 of the Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO v. Quinn*,
  680 F.3d 87 (7th Cir. 2012)............................................................................4

*Currier v. Potter*,
  379 F.3d 716 (9th Cir. 2004)..........................................................................8

*Davenport v. Wash. Educ. Ass'n*,
  551 U.S. 177 (2007) .....................................................................................19

*DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*,
  196 F.3d 958 (9th Cir. 1999)...........................................................6, 8, 16, 17

*Dirks v. Grasso*,
  449 F. App'x 589 (9th Cir. 2011)..................................................................25

*Edelman v. Jordan*,
  415 U.S. 668 (1974) ........................................................................................3

*Ex Parte Young*,
  209 U.S. 123 (1908) .............................................................................2, 3, 4

*Flint v. Dennison*,
  488 F.3d 816 (9th Cir. 2007)...........................................................................7

*Galiano v. Inst. of Governmental Studies at Univ. of Cal. at Berkeley*,
  No. 07-05557 SBA, 2008 WL 4155594 (N.D. Cal. Sept. 5, 2008) ....................24

*Gay Guardian Newspaper v. Ohoopee Reg'l Library Sys.*,
  235 F. Supp. 2d 1362 (S.D. Ga. 2002)....................................................7, 16

*Golden State Transit Corp. v. City of Los Angeles*,

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No.  3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

686 F.2d 758 (9th Cir. 1982) ...................................................................................15

*Gregoire v. Centennial Sch. Dist.*,
907 F.2d 1366 (3d Cir. 1990) ....................................................................................5

*Grossbaum v. Indianapolis-Marion Cty. Bldg. Auth.*,
100 F.3d 1287 (7th Cir. 1996) .......................................................................14, 15, 17, 22

*Harris v. McRae*,
448 U.S. 297 (1980) ................................................................................................19

*Hartman v. Moore*,
547 U.S. 250 (2006) ................................................................................................23

*Hazelwood Sch. Dist. v. Kuhlmeier*,
484 U.S. 260 (1988) ..................................................................................................6

*Hoeppner v. Town of Stettin*,
No. 14-CV-162-BBC, 2015 WL 3658192 (W.D. Wis. June 12, 2015) ..............16

*In re Hubbard*,
803 F.3d 1298 (11th Cir. 2015) ................................................................................23

*Kelley v. Metro. Cty. Bd. of Educ.*,
836 F.2d 986 (6th Cir. 1987) ......................................................................................4

*Kensington Volunteer Fire Dep't, Inc. v. Montgomery County*,
684 F.3d 462 (4th Cir. 2012) ..............................................................................23, 24

*Kincaid v. Gibson*,
236 F.3d 342 (6th Cir. 2001) ......................................................................................6

*Leathers v. Medlock*,
499 U.S. 439 (1991) ................................................................................................20

*Lone Star Sec. & Video, Inc. v. City of Los Angeles*,
827 F.3d 1192 (9th Cir. 2016) ..............................................................................13, 15

*McCray v. United States*,
195 U.S. 27 (1904) ..................................................................................................15

*McDonough Assocs., Inc. v. Grunloh*,
722 F.3d 1043 (7th Cir. 2013) ....................................................................................4

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iv -   Case No.  3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*,
  460 U.S. 575 (1983) .................................................................................19, 20

*Mocek v. City of Albuquerque*,
  813 F.3d 912 (10th Cir. 2015).............................................................................24

*Nat'l Archives & Records Admin. v. Favish*,
  541 U.S. 157 (2004) .............................................................................................23

*O'Boyle v. Sweetapple*,
  __ F. Supp. 3d __, 2016 WL 2868915 (S.D. Fla. 2016) ......................................23

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) .................................................................................................2

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
  460 U.S. 37 (1983) .................................................................................................7

*Planned Parenthood of Kan. & Mid-Missouri v. Moser*,
  747 F.3d 814 (10th Cir. 2014).............................................................................23

*Planned Parenthood of S. Nev., Inc. v. Clark Cty. Sch. Dist.*,
  941 F.2d 817 (9th Cir. 1991).................................................................................6

*R Distribs., Inc. v. Eikenberry*,
  725 F.2d 482 (9th Cir. 1984)...............................................................................19

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
  515 U.S. 819, 829 (1995) ..........................................................................5, 8, 9, 11

*RUI One Corp. v. City of Berkeley*,
  371 F.3d 1137 (9th Cir. 2004).............................................................................15

*Santa Monica Food Not Bombs v. City of Santa Monica*,
  450 F.3d 1022 (9th Cir. 2006)...............................................................................8

*Schain v. Schmidt*,
  396 F. App'x 713 (2d Cir. 2010).........................................................................17

*Seattle Mideast Awareness Campaign v. King Cty.*,
  781 F.3d 489 (9th Cir. 2015).................................................................................5

*Sons of Confederate Veterans, Va. Div. v. City of Lexington*,
  722 F.3d 224 (4th Cir. 2013).........................................................................15, 16

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO
- v -                                                Case No.  3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

*The Pitt News v. Pappert*,
  379 F.3d 96 (3d Cir. 2004) ................................................................................. 19

*Tipton v. Univ. of Hawaii*,
  15 F.3d 922 (9th Cir. 1994) ................................................................................ 10

*United States v. Bjerke*,
  796 F.2d 643 (3d Cir. 1986) .................................................................................. 8

*United States v. O'Brien*,
  391 U.S. 367 (1968) .................................................................................... 15, 23

*Uptown Pawn & Jewelry, Inc. v. City of Hollywood*,
  337 F.3d 1275 (11th Cir. 2003) .......................................................................... 11

*Va. Office for Prot. & Advocacy v. Stewart*,
  563 U.S. 247 (2011) ............................................................................................. 3

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*,
  135 S. Ct. 2239 (2015) ......................................................................................... 5

*Wisc. Interscholastic Athletic Ass'n v. Gannett Co.*,
  658 F.3d 614 (7th Cir. 2011) .............................................................................. 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Schiff Hardin LLP
Attorneys At Law
San Francisco

Case No.  3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

## I.   **INTRODUCTION**

Following this Court's November 1, 2016 Order denying Plaintiff's Motion for Preliminary Injunction and granting Defendants' Motion to Dismiss with leave to amend ("Order") Plaintiff filed its Second Amended Complaint ("SAC"), re-asserting the same Free Speech and Free Press claims alleged in the First Amended Complaint ("FAC"), and adding a new claim alleging retaliation in violation of the First Amendment.

While Plaintiff has chosen to re-assert its earlier claims, it has done little to add or change the relevant factual allegations underpinning those claims – which remain deficient for each of the reasons discussed in the Court's Order, and for the additional reasons set forth in Defendants' earlier briefing and below.  Nor has Plaintiff alleged any additional facts which have a material bearing on Defendants' immunity defense which, as this Court previously concluded, furnishes a separate and sufficient basis for dismissing the Complaint in its entirety.  Should the Court reach the merits of Plaintiff's Free Speech and Free Press claims as re-asserted in the SAC, they should, as before, be dismissed.  Because Plaintiff has now had ample opportunity to plead (and re-plead) these claims, they should be dismissed without leave to amend.

Having unsuccessfully argued that the First Amended Complaint included a retaliation claim, Plaintiff has now pled a separate claim for retaliation as the Fourth Claim of the SAC.  In so doing, Plaintiff seeks a "huge and unwarranted" expansion of First Amendment retaliation doctrine, one which would permit litigants to use retaliation claims to challenge legislative actions that have prospective and generalized application – such as the Media Amendment at issue here.  First, courts have consistently and wisely rejected such attempts, in part because they necessarily entail exploration of the subjective motives of the individuals who enacted the challenged law – an inquiry properly eschewed by the Supreme Court and lower courts for many decades. Second, courts have also rejected retaliation

1

claims where, as here, the challenged conduct consists of lawful restrictions on speech which survive constitutional scrutiny under the applicable forum analysis. These reasons furnish separate and equally sufficient grounds for dismissal of Plaintiff's retaliation claim here.

## II.    THE SECOND AMENDED COMPLAINT

In its Second Amended Complaint, Plaintiff adds a new claim alleging retaliation in violation of its rights under the First Amendment, and splits its prior Free Speech Clause claim into two separate claims, now alleged as the Second and Third claims for relief.  Apart from semantic differences in characterizing Defendants' actions, Plaintiff's factual allegations remain largely unchanged, with the exception of factual embellishment concerning the alleged discriminatory motive underlying the Associated Students' ("A.S.") decision to eliminate funding for print media ("Media Amendment"), SAC ¶¶ 79-84; 88-89, and new allegations addressing the differences between the print version and digital version of *The Koala*. SAC ¶¶ 40-47; 49-53. Plaintiff's newly pled retaliation claim relies on the same factual allegations underlying its Free Speech Clause claims, and asserts that A.S.'s defunding of print media was motivated by unlawful retaliatory animus.  SAC ¶¶ 119-36.

## III.    ARGUMENT

### A.    Plaintiff's Suit Is Barred By The Eleventh Amendment.

In granting Defendant's Motion to Dismiss the FAC, the Court ruled that Defendants are entitled to Eleventh Amendment immunity, concluding that the *Ex Parte Young* doctrine has no application where, as here, the remedy sought by the plaintiff is the receipt of state funds.  Order 6:10-17.  While Plaintiff was granted leave to amend, there are no new allegations in the SAC which change the nature of the relief sought.  Consequently, *Ex Parte Young* remains inapplicable, and Defendants remain entitled to Eleventh Amendment immunity.

*Ex Parte Young*, 209 U.S. 123 (1908) creates a "narrowly construed" exception to the general rule of sovereign immunity.  *Pennhurst State Sch. & Hosp. v.*

Schiff Hardin LLP
Attorneys At Law
San Francisco
- 2 -
Case No.  3:16-cv-01296-JM-BLM
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  *Halderman,* 465 U.S. 89, 114 n.25 (1984).  The *Ex Parte Young* exception provides

2  that "when a federal court commands a state official to do nothing more than refrain

3  from violating federal law, he is not the State for sovereign-immunity purposes." *Va.*

4  *Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011).  However, "*Ex*

5  *parte Young* cannot be used to obtain an injunction requiring the payment of funds

6  from the State's treasury…"  *Id*. at 256–57.[1]  When "the object of the suit against a

7  state officer is to reach funds in the state treasury," the *Ex Parte Young* exception does

8  not apply.  *Id*. at 258.

9       The Court previously concluded that, notwithstanding Plaintiff's attempt to

10  characterize its remedy as one for prospective relief only, "[a]t the heart of Plaintiff's

11  claim is a request to provide/restore funding from the state."  Order 6:11-12.  Because

12  the relief sought by Plaintiff in the FAC was to obtain funding for publication of

13  student print media, its impact on the statute treasury "is not merely ancillary but is

14  the essence of the relief sought."  Order 6:27-7:1.  Nothing in the SAC changes this

15  result.  Again, Plaintiff casts its claim for relief as one for prospective injunctive relief.

16  But there is no obscuring the fact that, as in the FAC, the essence of the relief sought

17  by Plaintiff remains the provision/restoration of A.S. funding for print media.  The

18  relevant changes in the SAC rely largely upon semantics.[2]  There is no meaningful

19  difference between the injunction described in the FAC and in the SAC.  In both

20  cases, Plaintiff seeks to undo the actions taken by A.S. to eliminate funding for

21  student print media sought by Registered Student Organizations ("RSOs").  In both

---

22  [1] To be sure, costs can be incurred to the state treasury as a "necessary consequence of
23  compliance in the future with a substantive federal-question determination," but only
   if those costs are "ancillary" to the requested relief.  *Edelman v. Jordan*, 415 U.S. 668
24  (1974); *see also Almond Hill Sch. v. U.S. Dep't of Agric.*, 768 F.2d 1030, 1034 (9th
   Cir. 1985) .
25  [2] For example, whereas the FAC alleges that Plaintiff seeks an injunction "to restore
26  the process for student organizations to seek and obtain funding for publication of
   student print media," the SAC characterizes this as an injunction to "to restore
27  eligibility of student organizations that publish print newspapers to seek funding for
   publication of such newspapers subject to otherwise valid procedures and
28  requirements."  FAC ¶ 4; SAC ¶ 4.

Schiff Hardin LLP
Attorneys At Law
San Francisco

cases, the injunction sought by Plaintiff would restore the process for RSOs to seek and obtain funding for publication of student print media.  In both cases, the essence of the relief sought is the provision or restoration of A.S. funding for student print media.  Thus, as in the FAC, the SAC seeks nothing more than to compel payment of state funds.  There is no other action by Defendants to which the act of payment is "ancillary."  The relief is not truly injunctive if "[t]he order to pay is ancillary only to itself.…"  *Kelley v. Metro. Cty. Bd. of Educ.,* 836 F.2d 986, 992 (6th Cir. 1987); *see also McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1051 (7th Cir. 2013).

While the Ninth Circuit has not directly confronted a *prospective* claim for purely monetary relief against a state defendant, the Seventh Circuit has found that the Eleventh Amendment bars such a suit.  *Council 31 of the Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 87 (7th Cir. 2012).  Here, as in *Quinn*, the "essence of the relief sought" consists of the payment of state funds, in this case, directly to the Plaintiff.  Accordingly, the *Ex Parte Young* exception does not apply, and Plaintiff's claims are barred by the Eleventh Amendment, in their entirety.[3]

**B.**  **Associated Students Had The Inherent Right To Close The Limited Public Forum For Campus Activity Fee-Funded Print Publications.**

1.   The Relevant Forum Consists of Campus Activity Fee Funded Print Publications.

A claim of infringement of First Amendment rights on government-owned property implicates the three-part test of the Supreme Court's forum analysis doctrine.

---

[3] Plaintiff's claims against Chancellor Khosla are barred for the additional reason that, in order to fall within the *Ex Parte Young* exception, the state official must have a sufficiently direct connection with enforcement of the provision or practice that is the subject of the constitutional challenge.  "[T]hat connection 'must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.'"  *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012).  Here, as with the FAC, there are no fact allegations establishing that Chancellor Khosla has any direct responsibility for enforcement or implementation of A.S.'s Standing Rules challenged by Plaintiff.  In the absence of sufficient fact allegations establishing such responsibility, Plaintiff's claims against Chancellor Khosla must be dismissed.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 4 -                Case No.  3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799-800 (1985). This analysis recognizes the interest of the government as an owner of property, but balances this interest against the rights granted by the First Amendment. *Gregoire v. Centennial Sch. Dist.*, 907 F.2d 1366, 1371 (3d Cir. 1990). Forum analysis applies when the government opens up government property to private speech. *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2250–51 (2015).[4] When the government takes actions with a content-based effect on speech in a traditional or designated public forum, its actions must meet strict scrutiny, *i.e.* the action must be "narrowly tailored to serve a compelling state interest." *Seattle Mideast Awareness Campaign v. King Cty.*, 781 F.3d 489, 496 (9th Cir. 2015). By contrast, when a government's actions have a content-based effect on speech in a limited public forum, the government's actions need only meet the lower bar of being "reasonable in light of the purpose of the forum." *Id*. at 499. Under either standard of scrutiny, the government's action must be viewpoint-neutral. *Walker*, 135 S. Ct. at 2246.

In *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995), the Supreme Court addressed student activity fees at the University of Virginia, which were administered by the student government in order to "open a forum for speech and support various student enterprises, including the publication of newspapers, in recognition of the diversity and creativity of student life." *Rosenberger*, 515 U.S. at 840. There, as here, the plaintiff was unable to obtain funding for the printing costs of its publication as a result of applicable fund guidelines, and challenged those guidelines under the First Amendment. In

---

[4] A "traditional public forum" is a place "such as a street or a park" which has traditionally been used as a place of public assembly. *Id.* at 2250. A "designated public forum" exists where "government property that has not traditionally been regarded as a public forum is intentionally opened up for that purpose . . . ." *Id.* at 2250. The third category is a "limited public forum," in which the government "has reserved a forum for certain groups or for the discussion of certain topics." *Id.*

Schiff Hardin LLP
Attorneys At Law
San Francisco

- 5 -                    Case No. 3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Rosenberger*, as here, the plaintiff's First Amendment claims are properly analyzed as addressing speech in a limited public forum.[5]  The relevant forum is defined with reference to "the access sought by the speaker."  *Cornelius*, 473 U.S. at 801; *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 965 (9th Cir. 1999). *Cornelius* mandates a "tailored approach in ascertaining the perimeters of the forum" by tracking the "particular channel of communication" sought by the speaker.  *Id.*  In granting Defendants' motion to dismiss the FAC, this Court concluded:

> As Plaintiff seeks to restore and obtain access for funding for print media, the court agrees with Defendants, based upon the FAC's current allegations, that the relevant forum consists of Associated Students' funding of student print publications.

Order 9:4-8.[6]  The relevant allegations as pled in the SAC remain unchanged: Plaintiff contends that Defendants discriminatorily disqualified it from obtaining A.S. funding for student print media, and it seeks to restore access to that funding by enjoining enforcement of A.S.'s enactment of the Media Amendment.  SAC ¶¶ 2-4, 87-88, 98, 109, Prayer for Relief ¶ 1.  Because funding for student print media remains the channel of communication sought by Plaintiff under the SAC, the relevant forum must continue to be defined as A.S.'s funding of student print publications.

---

[5] In the SAC, Plaintiff continues to refer to the relevant forum as a "limited public forum."  SAC ¶ 29.  The SAC also includes new allegations referring to the alleged "expulsion" of Plaintiff and other RSOs from this forum.  *See, e.g.*, SAC ¶ 112.  It remains unclear whether Plaintiff will seek to renew its arguments, raised in opposition to Defendant's earlier Motion to Dismiss, that this alleged "expulsion" is subject to strict scrutiny, a standard that applies in the context of a traditional public forum or a designated public forum, but not a limited public forum.  Plff's Oppo. MPA, DE 20, p.17. Because the applicable standard for the limited public forum at issue here is controlled by *Rosenberger*, any such attempt by Plaintiff to rely upon strict scrutiny must be rejected, as was Plaintiff's earlier attempt.  Order 9:22-24.

[6] This result is consistent with the many cases in which courts have defined the relevant forum narrowly, with reference to the specific channel of communication sought or utilized by the plaintiff.  *See, e.g, Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 270 (1988); *Planned Parenthood of S. Nev., Inc. v. Clark Cty. Sch. Dist.*, 941 F.2d 817, 829 (9th Cir. 1991) (en banc); *Kincaid v. Gibson*, 236 F.3d 342, 348 (6th Cir. 2001).

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 6 -                                    Case No.  3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1        The SAC reasserts the allegations of the FAC in which Plaintiff seeks to define

2    a forum far broader than the one to which it seeks access.  SAC ¶¶ 17-30.  Plaintiff

3    again alleges that University policy and A.S.'s rules and practices, taken together,

4    broadly constitute a single "limited public forum" for registered student organizations,

5    apparently encompassing every funded activity any such organization may engage in.

6    SAC ¶ 29.  As the Court previously concluded, Plaintiff's definition is demonstrably

7    overbroad.  Order 9:8-14.  By sweeping in a wide array of activities, restrictions,

8    regulations and practices that have little or no bearing on the funding of printed

9    publications, Plaintiff's proffered forum definition ignores the parameters for forum

10   definition set by *Cornelius*, and is contrary to the many decisions in which courts have

11   rejected overbroad definitions of the relevant forum.[7]  In short, the SAC alleges no

12   new facts which support the Court changing its conclusion that the relevant forum

13   consists of A.S. funding for student print media – and that the Media Amendment

14   effectively closed that forum to all RSOs.

15             2.     Associated Students Was Entitled To Close The Forum.

16       Having established a limited public forum for funding student print

17   publications, A.S. was not constitutionally obliged to maintain that forum indefinitely.

18   To the contrary, courts applying forum analysis have recognized that the government

19   retains an inherent right to control its property – a right that includes closing the forum

20   it has created.  Because A.S. was entitled to close the forum at its discretion,

21   Defendants are entitled to dismissal of Plaintiff's First Amendment claims, even

22   without reference to the demonstrable reasonableness of its actions.

23       When faced with anything other than a traditional public forum, the state "is

24   not required to indefinitely retain the open character of the facility…."  *Perry Educ.*

25

26   ───────────

[7] *See, e.g.*, *Air Line Pilots Ass'n, Int'l v. Dep't of Aviation of Chicago*, 45 F.3d 1144, 1151 (7th Cir. 1995); *Flint v. Dennison*, 488 F.3d 816, 831 (9th Cir. 2007); *Bloedorn*

27   *v. Grube*, 631 F.3d 1218, 1232 (11th Cir. 2011); *Gay Guardian Newspaper v. Ohoopee Reg'l Library Sys.*, 235 F. Supp. 2d 1362, 1368–73 (S.D. Ga. 2002), *aff'd* 90

28   F. App'x 386 (11th Cir. 2003) (table opinion).

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 7 -        Case No.  3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  *Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983); *Cornelius*, 473 U.S. at

2  802.  The Ninth Circuit, as well as others, has explicitly acknowledged that a public

3  entity maintains the discretion to close a limited public forum "whenever it wants."

4  *DiLoreto*, 196 F.3d at 970 ("The government has an inherent right to control its

5  property, which includes the right to close a previously open forum."); *Santa Monica*

6  *Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1032 (9th Cir. 2006)

7  (noting that designated public forum that was subject of prior challenge was "now

8  closed" as a result of  changes to ordinance, and further noting that the government

9  may close such a forum "whenever it wants."); *Currier v. Potter*, 379 F.3d 716, 728

10  (9th Cir. 2004); *United States v. Bjerke,* 796 F.2d 643, 647 (3d Cir. 1986).

11      By choosing to end funding for all printed publications, A.S. exercised its

12  prerogative—its "inherent right"—to close the limited public forum it had established.

13  Plaintiff has no basis under the First Amendment to force A.S. to re-open a forum it

14  had the inherent right to close.  Accordingly, Plaintiff's First Amendment claims

15  should be dismissed in their entirety.

16  **C.**   **Even If Associated Students' Action Is Viewed As A Restriction Rather**
       **Than A Closure Of The Relevant Forum, There Is No First Amendment**

17      **Violation.**

18      Plaintiff seeks to avoid application of the forum closure cases through an

19  overbroad definition of the relevant forum, which, it contends, was limited but not

20  closed.  For the reasons set forth above, Plaintiff's alleged definition ignores

21  controlling principles defining the forum according to the access sought by the

22  speaker, and should be rejected by this court.  But even if the Media Amendment is

23  viewed as a restriction on the overbroad forum alleged by Plaintiff rather than as a

24  forum closure, the result would be the same.  "In a limited public forum, restrictions

25  that are viewpoint neutral and reasonable in light of the purpose served by the forum

26  are permissible."  *DiLoreto*, 196 F.3d at 965 (citing *Rosenberger*, 515 U.S. at 829).

27  Because A.S.'s actions readily meet this standard, Plaintiff's First Amendment claims

28  must fail, irrespective of whether the relevant forum was closed, or restricted.

Schiff Hardin LLP
Attorneys At Law
San Francisco

- 8 -                  Case No.  3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

The SAC purports to state two separate freedom of speech claims, each one corresponding to the two inquiries framed in *Rosenberger*. In its Second Claim, Plaintiff contends that the Media Amendment resulted in the "expulsion" of Plaintiff and other student print publications from the overbroad forum defined by Plaintiff. SAC ¶¶ 111-15. Plaintiff alleges that this "expulsion" violates the Free Speech Clause, asserting that it is unreasonable in light of the purposes of the forum. SAC ¶ 114. In its Third Claim, Plaintiff alleges that the Media Amendment was motivated by unlawful viewpoint discrimination – a contention belied by the fact that, by its terms, the Media Amendment withdrew funding for print media from *all* RSOs. SAC ¶¶ 116-118.

1.  Plaintiff's "Expulsion From Forum" Claim Fails To State A Claim For Relief.

In its Third Claim, Plaintiff asserts that Defendant violated the Free Speech clause when it "expelled" it from a "forum designed for the speech of student organizations." SAC ¶ 114. These allegations resurrect an argument from Plaintiff's earlier briefing, where, in opposing Defendants' Motion to Dismiss, Plaintiff cited cases addressing the "expulsion" of speakers from designated public forums, noting that courts subjected these governmental actions to strict scrutiny.[8] Referring to Plaintiff's failure to address the alleged restrictions in the relevant context of a limited public forum, this Court rejected Plaintiff's bid to apply strict scrutiny and, citing *Rosenberger*, analyzed whether A.S.'s restrictions are reasonable in light of the purposes served by the forum. Order 9:17-24. Any similar attempt by Plaintiff to again invoke strict scrutiny here should similarly be rejected.

Even assuming solely for the purposes of this argument that the relevant forum is as broad as Plaintiff alleges, Plaintiff's claim still fails. Like the Student Activity Funds at issue in *Rosenberger*, the allocation of Campus Activity Fees to RSOs here

---

[8] *See* Plaintiff's Opposition To Motion To Dismiss, DE 20 at 16:17-17:13.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 9 -                    Case No.  3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

is in furtherance of the University's "educational purpose." *Id*. at 824. By policy, the University requires that Campus Activity Fees be allocated to RSOs "consistent with the University's educational purposes." UC Policy on Compulsory Campus-Based Student Fees § 86.10. SAC Exh. 4, p.6. Those purposes are identified in the policies as follows: "(1) to provide opportunities for the educational benefits and personal and social enrichment that derive from participation in extracurricular programs and activities; and (2) to stimulate on-campus discussion and debate on a wide range of issues from a variety of viewpoints." *Id*. at § 86.20. By withdrawing funding from print media, A.S. made those funds available for distribution in support of other activities of RSOs. Any such re-allocation is subject to the requirements and restrictions set forth in the applicable University and campus policies, as well as the Standing Rules. Under these policies, the fund re-allocations *must* be in furtherance of the University's educational purposes, as defined. Plaintiff has not alleged that the funds were allocated to any improper or unreasonable purpose; only that they were allocated *away* from print media. Thus, in re-allocating funds pursuant to these policies and Rules, A.S.'s actions are by definition reasonable in light of the educational purposes of the forum.

Courts and litigants are not in the position to second-guess the choices made by the student government as to *which* authorized RSO recipients are more deserving. Indeed, courts defer to educational priorities set by public universities, including priorities governing administration of student fees for extracurricular activities. *See Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez,* 561 U.S. 661, 687 n.16 (2010) (stating that "courts should resist 'substituting their own notions of sound educational policy for those of the school authorities which they review'" and that "determinations of what constitutes sound educational policy or what goals a student-organization forum ought to serve fall within the discretion of school administrators and educators"). This latitude extends into the realm of extracurricular activities. *Tipton v. Univ. of Hawaii*, 15 F.3d 922,

Schiff Hardin LLP
Attorneys At Law
San Francisco

- 10 -                    Case No. 3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

926 (9th Cir. 1994) ("[T]he University has wide latitude in adopting a funding policy to allocate the limited resources available to promote students' extracurricular activities."); *Christian Legal Soc'y [Hastings]* at 686-87 ("A college's commission— and its concomitant license to choose among pedagogical approaches—is not confined to the classroom, for extracurricular programs are, today, essential parts of the educational process.")  The SAC alleges no facts indicating that A.S. has engaged in or is contemplating any *ultra vires* re-allocation of funds previously directed to support printed publications.  Because any such re-allocations continue to serve the purposes of the forum (as broadly defined by Plaintiff), the de-funding of printed publications remains reasonable within the meaning of *Rosenberger*.

Plaintiff cannot avoid this result by a misreading of section 86.20.  Plaintiff cites this policy as support for its assertion that the "declared purpose" of the forum consists of subpart (2), but in so doing completely disregards subpart (1).  *See* SAC ¶ 37.  In Plaintiff's myopic view, *any* reallocation of Campus Activity Fees away from *any* speech-related activity would be contrary to the "declared purpose" of the forum for funding RSOs and therefore "unreasonable," —regardless of what other educational purposes are served by the fee reallocation.[9]  Plaintiff's view is contradicted by the terms of section 86.20, which explicitly identifies broad support of extracurricular activities as an authorized use of campus activity funds, and which must be considered as part of the "declared purpose" of the broad forum defined by Plaintiff.

Further, the Supreme Court has found "restrictions on access to a limited public forum" to be "more creditworthy in view of the 'substantial alternative channels that remain open for [student-plaintiffs'] communication to take place.'"  *Christian Legal Soc'y [Hastings]*, 561 U.S. at 690; *see also Uptown Pawn & Jewelry, Inc. v. City of*

---

[9] Thus, a decision reallocating some of the funding previously directed to print media to, for example, pay for the UCSD Chess Club to participate in a tournament would, in Plaintiff's view, be "unreasonable," notwithstanding the fact that it would support participation in an authorized extracurricular activity.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 11 -                                              Case No.  3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Hollywood*, 337 F.3d 1275, 1281 (11th Cir. 2003) ("[T]he presence of numerous alternative channels for pawnshop advertisements also supports the conclusion that the City's proprietary decision to limit advertising on bus benches is reasonable.").  As this Court previously observed: "[p]ublication, once exclusively within the realm of print media, is now also communicated digitally on-line and on social media sites." Order 10:24-25.  Plaintiff alleges that it has communicated its message through the internet.  SAC ¶¶ 39, 65.  While Plaintiff alleges its preference for communicating in print media, SAC ¶¶ 40-53, "[t]he First Amendment does not demand unrestricted access to a nonpublic forum merely because use of that forum may be the most efficient means of delivering the speaker's message." *Cornelius*, 473 U.S. at 803; *accord Cogswell v. City of Seattle*, 347 F.3d 809, 817-18 (9th Cir. 2003). Notwithstanding Plaintiff's alleged preferences for disseminating its message via print media, the fact that Plaintiff can and does communicate its message through other channels of communication weighs heavily in favor of a finding that A.S.'s actions were reasonable.

2.      Plaintiff's "Viewpoint Discrimination" Claim Fails To State A Claim For Relief.

Apart from re-asserting its previous allegations of viewpoint discrimination in what is now presented as a stand-alone claim, Plaintiff's Third Claim presents nothing of significance that is new.  The SAC adds factual allegations purporting to support Plaintiff's assertion that A.S. acted with a discriminatory motive in adopting the Media Amendment.  *See, e.g.*, SAC ¶¶ 80-84, 88-89.  But these new allegations remain legally irrelevant, since it is the conduct of the government actors and not their motivation that is determinative of First Amendment issues in the context of a limited public forum.  *See* Order 10:8-12.  The Media Amendment resulted in the elimination of funding for print media to <u>all</u> RSOs.  SAC ¶¶ 86, 87.[10]  This Court has concluded

---

[10]  Plaintiff vaguely alleges on information and belief that following adoption of the Media Amendment, "the Student Government" continues "to provide financial support" to a student publication known as The Collective Voice.  SAC ¶ 95.

Schiff Hardin LLP
Attorneys At Law
San Francisco

- 12 -                                     Case No.  3:16-cv-01296-JM-BLM
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1    that, based on the allegations then before it, A.S.'s adoption of the Media Amendment

2    was both content- and viewpoint-neutral within the meaning of *Rosenberger*.  Order

3    10:5-7.  Nothing in the SAC changes this result.  Because Plaintiff has again failed to

4    allege facts supporting its claim of viewpoint discrimination, that claim should be

5    dismissed, without leave to amend.

6        The Media Amendment was both content-neutral and viewpoint-neutral.[11]

7    A.S.'s decision to end funding to RSOs for print publications is content-neutral

8    because it applies to all such publications, without exception, and without regard to

9    the message or content of the publication.  Because viewpoint discrimination is a

10   subset of content discrimination, any state action that is content-neutral is by

11   definition viewpoint-neutral.  Because the Media Amendment "draws no distinction

12   between groups based on their message or perspective" it "is textbook viewpoint

13   neutral."  *See Christian Legal Soc'y* [*Hastings*], 561 U.S. at 694-95, & n.25.  Plaintiff

14   alleges that A.S.'s decision was not viewpoint-neutral—but it has failed to allege a

15   sufficient factual basis for this contention, because its efforts to do so depend entirely

16   upon allegations of improper motive.  *See, e.g.*, SAC ¶ 88.  This was true for the FAC,

17

---

18   Critically, Plaintiff does **not** allege that The Collective Voice is an RSO, or that it
19   receives any campus activity fee funding.  As the A.S. Funding Guide
     acknowledges, funding for student activities that are <u>not</u> covered in the Funding
20   Guide may be available from "other on-campus resources," including SPACES.
     DE 25-1, p.26.  The 2015 A.S. budget submitted as part of Plaintiff's previous
21   Request for Judicial Notice shows that SPACES funding came through the
     Referendum and Return to Aid budget, not the Office of Student Organizations.
22   DE 2, ¶ 12.  In fact, neither SPACES nor The Collective Voice is a registered
23   student organization.  Rather, SPACES is a commission of A.S., which, like other
     A.S. boards and commissions, is functionally part of A.S. and its speech is thus
24   A.S. speaking on its own behalf.  Because Plaintiff has failed to allege that The
     Collective Voice is an RSO, or that it has received any campus activity fee funding,
25   the SAC's reference to it is entirely beside the point, and does nothing to support
     Plaintiff's allegations of viewpoint discrimination.
26   [11] A regulation is content-neutral if it affects speech but "do[es] not single out a
27   specific subject matter for differential treatment, nor . . . exempt[s] from regulation" a
     class of speaker.  *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192,
28   1200 (9th Cir. 2016).

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    and remains true for the SAC.

2         Where, as here, the alleged forum restriction is content-neutral, allegations of

3    improper motive are beside the point, and do nothing to support allegations of

4    viewpoint discrimination.  The Seventh Circuit's decision in *Grossbaum v.*

5    *Indianapolis-Marion Cty. Bldg. Auth.*, 100 F.3d 1287, 1293 (7th Cir. 1996)

6    ("*Grossbaum II*") is instructive.  There, the Seventh Circuit set out to resolve "the

7    issue of what role a government body's motive plays in constitutional analysis when

8    that body tries to regulate speech in a nonpublic forum."  *Id.* at 1290.[12]  In rejecting

9    the plaintiff's challenge, the Seventh Circuit engaged in an extended inquiry into the

10   role of motive in assessing a content-neutral regulation of speech in a nonpublic

11   forum.  The court observed that, while motive may be relevant in reviewing content-

12   based speech regulations, no such danger exists where the government restricts speech

13   in a content-neutral fashion.  Because a content-neutral regulation makes no

14   distinctions based on the communicative nature or impact of the speech, all

15   viewpoints are treated equally.  This remains true "whatever the intent of the

16   government actors," so that "content-neutral speech regulations in nonpublic fora pass

17   constitutional muster regardless of motive."  *Id.* at 1299.

18       The Seventh Circuit supported this conclusion by citation to *Capitol Square*

19   *Review & Advisory Bd. v. Pinette*, 515 U.S. 753 (1995), where the Supreme Court

20   suggested "that content-neutral regulations are free from motive inquiries even in

21   public forum cases."  *Grossbaum II* at 1298.[13]  The Seventh Circuit found further

---

[12] In an earlier appeal, these plaintiffs had successfully challenged the policy of a local building authority that prohibited religious displays (including the plaintiffs' menorah) in the lobby of its County Building.  Following that decision, the building authority amended its rules to exclude *all* displays (religious or otherwise) by any private group or individual.  The plaintiffs challenged the new rule, asserting – much as *The Koala* does here – that while the rule was content-neutral, it was motivated by viewpoint discrimination, aimed in that case at the plaintiffs and their expressed desire to display a menorah.

[13] In *Capitol Square*, the Supreme Court addressed the denial of a permit to the Ku Klux Klan for the erection of a Latin cross in a public forum, after the government had granted permission for a Christmas tree and menorah to be displayed.  The

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 14 -                          Case No.  3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1    support in *United States v. O'Brien*, 391 U.S. 367 (1968), a Free Speech Clause case

2    in which "the Supreme Court recognized that 'it is a familiar principle of

3    constitutional law that this Court will not strike down an otherwise constitutional

4    statute on the basis of an alleged illicit legislative motive.'"[14]  *Grossbaum II* at 1293

5    (quoting *O'Brien* at 383); *accord Golden State Transit Corp. v. City of Los Angeles*,

6    686 F.2d 758, 759 (9th Cir. 1982); *RUI One Corp. v. City of Berkeley* 371 F.3d 1137,

7    1146 n.7 (9th Cir. 2004).[15]

8            Other courts have, like the Seventh Circuit, concluded that allegedly censorious

9    motives underlying a content-neutral regulation closing or restricting speech in a

10   designated public forum cannot serve as a basis for a First Amendment challenge.  In

11   *Sons of Confederate Veterans, Va. Div. v. City of Lexington*, 722 F.3d 224, 231 (4th

12   Cir. 2013), the Fourth Circuit affirmed dismissal of a First Amendment challenge to a

13   Lexington, Virginia ordinance prohibiting the display of private flags in City-owned

---

Supreme Court observed that Ohio "could ban all unattended private displays in [the forum] if it so desired." *Id*. at 783. (Souter, J., concurring in part and concurring in the judgment).  Justice Souter agreed with both the majority opinion (at 761) and Justice Stevens' dissent (at 802-03), making eight justices who agreed on this point; Justice Ginsburg, in dissent, did not reach the issue.  As the *Grossbaum II* court observed, such a ban on all private displays "would seem impossible . . . if Ohio's undisputed desire to keep the Klan off of government property would be sufficient to establish viewpoint discrimination." *Grossbaum II*, 100 F.3d at 1299.

[14]  This principle was old over a century ago: "The decisions of this court from the beginning lend no support whatever to the assumption that the judiciary may restrain the exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted." *McCray v. United States*, 195 U.S. 27, 56 (1904).

[15] Inquiries into legislative motive may be justified in certain contexts, including Equal Protection Clause cases and cases involving anti-discrimination statutes that explicitly require an inquiry into motive.  *Grossbaum II*, 100 F.3d at 1292; *City of Las Vegas v. Foley*, 747 F.2d 1294, 1298 (9th Cir. 1984) (under "extraordinary circumstances," inquiry is permitted into legislators' motive in cases "where a plaintiff must prove invidious purpose or intent, as in racial discrimination cases.").  Unlike the Equal Protection Clause and anti-discrimination statutes, there is no constitutional or statutory imperative under the Free Speech Clause to examine the government's motives.  To the contrary, as demonstrated above, the Supreme Court, the Ninth Circuit, and other circuits have consistently found such inquiries inappropriate.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 15 -                                    Case No.  3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

flag standards, and restricting use of the standard to display of the American flag and the flags of the Commonwealth of Virginia and the City of Lexington.  Following adoption of the ordinance, the SCV – much like Plaintiff here – raised a First Amendment challenge, asserting that the ordinance was Lexington's response to the SCV's request to display the Confederate flag and thus constituted viewpoint discrimination in violation of the Free Speech Clause.  The Fourth Circuit rejected SCV's contention on appeal that the motive behind the Ordinance dictates its constitutionality: "The Free Speech Clause only 'forbids Congress and . . . the States from making laws abridging the freedom of speech'—a far different proposition than prohibiting the intent to abridge such freedom."  *Id*. at 231.  Regardless of what motivations underlie Lexington's adoption of the ordinance, because "it did not exclude either a specific speaker or a specific class of speech," the alleged motives of the legislators who enacted it were irrelevant.  *Id*.

Similarly, in *Gay Guardian Newspaper v. Ohoopee Regional Library System*, 235 F. Supp. 2d 1362-64 (S.D. Ga. 2002) a public library permitted a gay rights advocacy publication to be distributed with other free publications on a front lobby table.  After it received objections to having the publication in its lobby, the library restricted the table to government and library-generated materials only.  The plaintiff asserted – much as Plaintiff does here – that the library was unconstitutionally censoring it "even at the expense of squelching other, non-gay speakers."  *Id*.  The court engaged in an extended discussion of whether the library could constitutionally exclude all private speech from the limited public forum that had been created on the lobby table, and concluded it could – even if it did so with an "impermissibly censorious motive." *Id*. at 1371-77.  Other cases are to similar effect.[16]

The Ninth Circuit's decision in *DiLoreto* is also instructive, and entirely in line

---

[16] *See, e.g., ACLU v. Mineta*, 319 F. Supp. 2d 69, 83 (D.D.C. 2004); *Hoeppner v. Town of Stettin*, No. 14-CV-162-BBC, 2015 WL 3658192, at *1-2 (W.D. Wis. June 12, 2015).

Schiff Hardin LLP
Attorneys At Law
San Francisco

- 16 -                          Case No.  3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1   with the foregoing authorities.  *See* 196 F.3d at 970.  There, the Ninth Circuit upheld a

2   school district's decision to close a nonpublic forum – an advertising space on a high

3   school baseball field fence – to prevent the display of an advertisement containing the

4   text of the Ten Commandments.  Because the *effect* of the school district's action was

5   neutral, in that it excluded all advertisers, the fact that the district was allegedly

6   motivated by the desire to exclude the plaintiff's religious message did not transform

7   the action into an instance of viewpoint discrimination.  In short, the exclusionary

8   motive did not matter, because the effect was neutral.  In reaching its conclusion, the

9   court cited with approval *Grossbaum II* for its holding that it is not unconstitutional

10  for the government to exclude *all* displays, in order to avoid allowing a religious

11  display.  *DiLoreto* was, in turn, cited by the district court in *Gay Guardian Newspaper*

12  as support for its conclusion that there is no viewpoint discrimination when all

13  viewpoints are equally excluded – regardless of the motive for exclusion.[17]

14      In sum, Plaintiff's reliance upon allegations of improper motives of A.S.

15  Council members who voted on the Media Amendment has no proper role to play,

16  and does nothing to counter the unchallenged neutral effect of the Amendment.

17  Because Plaintiff has failed to allege facts sufficient to show that the Media

18  Amendment lacked the required viewpoint neutrality, its Third Claim must fail.

19  **D.    Plaintiff Fails To State A Claim Under The Free Press Clause.**

20      Following full briefing by each side addressing Plaintiff's claim under the Free

21  Press Clause, and extended argument at the hearing on Defendants' motion to dismiss

---

[17]  The courts' refusal to inquire into legislative motives is not limited to forum closure cases.  *See, e.g., Children of the Rosary v. City of Phoenix*, 154 F.3d 972, 980 (9th Cir. 1998) (citing *Grossbaum II* and concluding that city's facially neutral standards for accepting advertising on municipal buses was constitutional, despite evidence of discriminatory motive, where there was no indication that city applied standards in viewpoint discriminatory manner); *Kensington Volunteer Fire Dep't, Inc.*, 684 F.3d at 468 (affirming dismissal of First Amendment claims against facially content-neutral budget amendment); *Almengor v. Schmidt*, 692 F. Supp. 2d 396, 398 (S.D.N.Y. 2010) (dismissing challenge to student fee regulations that was "based on the assertion that they were adopted for improper motive.") *aff'd sub nom. Schain v. Schmidt*, 396 F. App'x 713 (2d Cir. 2010).

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 17 -                           Case No.  3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

that claim, the Court granted Defendants' motion, albeit with leave to amend.  Order 11:7-11.  Plaintiff has done little in the SAC to modify the allegations pertaining to this claim, which remain substantially the same – and equally as deficient – as the claim pled in the FAC.

Again, the minimal relevant changes in the SAC are largely semantic, and have no material impact on the arguments previously advanced by each side concerning this claim.  The FAC alleged that Defendants violated the Free Press Clause by "categorically refusing to provide campus activity fee funding for the publication of student print media by *The Koala* or others, while continuing to fund other forms of speech and activity by student organizations."  FAC ¶ 85.  The SAC similarly asserts that the alleged violation consists of Defendants "adopting and enforcing the Media Disqualification and thus excluding *The Koala* and other student print publications from eligibility to seek campus activity fee funding for the publication of student print newspapers, while continuing to treat other student organizations as eligible to seek campus activity fee funding for other forms of speech and expressive conduct."  SAC ¶ 109.  In each version of its Complaint, Plaintiff relies upon the same unsupportable assertion that Defendants violated the Free Press Clause by de-funding and thereby discriminating against student print media, while maintaining access to funding for other forms of speech by student organizations.  As established in the previous briefing, and as recapped in the discussion below, Plaintiff's claim rests upon its misreading of Supreme Court precedents as extending the reach of the Free Press Clause to prohibit *any* form of differential treatment of the press – including withdrawal of a subsidy.  Because the Free Press Clause has never been so broadly construed, and because the instant case bears no resemblance to the discriminatory taxes and similar government actions which have been struck down as unduly burdensome and threatening to a free press, the First Claim of the SAC should be dismissed, without leave to amend.

The Supreme Court has applied the Free Press Clause in striking down

Schiff Hardin LLP
Attorneys At Law
San Francisco

- 18 -                                   Case No.  3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

discriminatory taxes and other laws that impose special financial burdens on the media.  The rationale running through the Free Press Clause cases repeatedly refers to the coercive power to tax, and the legitimate role played by the Free Press Clause in shielding the press from the discriminatory exercise of the potentially destructive power to tax.  *Arkansas Writers' Project, Inc. v. Ragland* 481 U.S. 221, 228 (1987) ("We need not fear that the government will destroy a selected group of taxpayers by burdensome taxation if it must impose the same burden on the rest of its constituency." (quoting *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 585 (1983) ("*Minneapolis Star*"))).  Similar concerns arise where the government "unjustifiably imposes a financial burden on a particular segment of the media," *The Pitt News v. Pappert,* 379 F.3d 96, 109 (3d Cir. 2004), or where it singles out the press with costly and burdensome regulations, penalties, or fines.  *Assoc. Film Distrib. Corp. v. Thornburgh*, 800 F.2d 369, 374-75 (3d Cir. 1986); *J–R Distribs., Inc. v. Eikenberry*, 725 F.2d 482, 495 (9th Cir. 1984), *rev'd. on other grounds sub nom. Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491 (1985).

The potential threats posed by such taxes, penalties, regulations, and fines do not exist with regard to the administration of government subsidies such as the Campus Activity Funds at issue here.  *Harris v. McRae*, 448 U.S. 297, 317 n.19 (1980) ("A refusal to fund protected activity, without more, cannot be equated with the imposition of a 'penalty' on that activity."); *Wisc. Interscholastic Athletic Ass'n v. Gannett Co.*, 658 F.3d 614, 629 (7th Cir. 2011) (holding that decision to award rights to an athletic broadcast to one television station and not others was not "a special tax on the press" for First Amendment purposes).  Indeed, the Supreme Court has acknowledged as "black letter law" a fundamental distinction between government subsidies and regulations in the free speech context.  *Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 188 (2007) (recognizing as "well established" that the government can make content-based distinctions when it subsidizes speech).  Nothing in the Free Press Clause jurisprudence suggests that it was intended to promote, guarantee, or protect

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 19 -                Case No.  3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1    affirmative government assistance to the press.  In short, Plaintiff seeks to deploy the

2    Free Press Clause for a purpose that is unrecognized in the case law.

3          Plaintiff's previous attempts to rely upon the Supreme Court's decision in

4    *Minneapolis Star* are entirely inapt.  Unlike the present case, *Minneapolis Star*

5    addresses a differential tax aimed at the press that "gives a government a powerful

6    weapon against the taxpayer selected."  460 U.S. at 585.  Nothing in *Minneapolis Star*

7    suggests its holding broadly extends to government subsidies, nor does it suggest that

8    such subsidies (as opposed to taxes, fines, or penalties) can be used as "a powerful

9    weapon" against recipients of the government's largesse.  Rather, *Minneapolis Star*

10   and the Supreme Court cases it cites address the potential for mischief arising out of

11   the government's power to tax and regulate, and to use these powers to threaten media

12   entities that are subjected to such measures.  *See also Pitt News,* 379 F.3d at 110

13   ("[C]ourts must be wary that taxes, regulatory laws, and other laws that impose

14   financial burdens are not used to undermine freedom of the press and freedom of

15   speech.  Government can attempt to cow the media in general by singling it out for

16   special financial burdens.  Government can also seek to control, weaken, or destroy a

17   disfavored segment of the media by targeting that segment.")  Courts have construed

18   the Free Press Clause as protecting the press against the discriminatory exercise of

19   coercive government powers.  *See Leathers v. Medlock*, 499 U.S. 439, 453 (1991)

20   ("[D]ifferential taxation of speakers, even members of the press, does not implicate

21   the First Amendment unless the tax is directed at, or presents the danger of

22   suppressing, particular ideas" and therefore "the State's extension of its generally

23   applicable sales tax to cable television services alone, or to cable and satellite services,

24   while exempting the print media, does not violate the First Amendment.").  No court

25   has construed the Free Press Clause to create a "protected classification" for the press,

26   guaranteeing "the press" access to every subsidy program the government makes

27   available to any person or entity who might also engage in expressive activity.

28         Nor can Plaintiff contend that the Free Press Clause compels the government to

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 20 -                    Case No.  3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

maintain subsidies, once they are granted, and to continue to maintain them, apparently indefinitely.  Under Plaintiff's view, a public university would be *constitutionally barred*, absent a showing that it is necessary to achieve a compelling state interest, from singling out a subsidy to a student publication for reduction or elimination, even if it decided that these funds might be better spent on awarding scholarships, funding research, enhancing campus safety, or on other priorities. Where the university also funds other speech-related activities, it would, absent a showing that it is necessary to achieve a compelling state interest, be *constitutionally compelled* to reduce funding to these other activities in direct proportion to any funding reduction to the student publication, so as to avoid any "discrimination" against "the press."  The Free Press Clause does not imbue the press with such encompassing protections and privileges.  Rather, the relevant case law reflects measured protections against government taxes, fines, penalties, and burdensome regulations targeting and thereby threatening the press.   Because these protections are in no way implicated by A.S.'s decision to re-allocate funds from student print media to other projects, Plaintiff's claim under the Free Press Clause fails to state a claim.

## E.   **Plaintiff Fails To State A First Amendment Retaliation Claim**

Faced with the prospect of dismissal, Plaintiff argued for the first time in its opposition to Defendants' initial motion to dismiss that it was also asserting a claim for retaliation in violation of its First Amendment rights.  In its Order granting Defendants' motion, the Court noted the absence of any such claim in the First Amended Complaint, but granted Plaintiff leave to amend.  Order 10:13-15.  The SAC's resulting retaliation claim presents an ill-fated attempt at an end run around the limited public forum cases, which furnish the controlling principles in determining Plaintiff's First Amendment claims.[18]

---

[18] To state a claim for First Amendment retaliation against a government official, a plaintiff must demonstrate that: "(1) it engaged in constitutionally protected activity; (2) the defendant's actions would "chill a person of ordinary firmness" from continuing to engage in the protected activity; and (3) the protected activity

Schiff Hardin LLP
Attorneys At Law
San Francisco

- 21 -

Case No.  3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1    First, Plaintiff's resort to a retaliation theory has no place under the facts

2  alleged here, because Plaintiff seeks to challenge the Media Amendment, a

3  legislative enactment that applies generally and prospectively to all RSOs at UCSD.

4  "[C]ourts will not sustain a retaliation claim where a plaintiff challenges only the

5  enactment of a prospective, generally applicable rule." *Grossbaum II*, 100 F.3d at

6  1295.  Instead, "retaliation doctrine protects citizens against those individualized,

7  discretionary government actions where the government's coercive power is

8  greatest, not against government rules that affect both majority and minority alike."

9  *Id*.[19]  In *Grossbaum II*, the Seventh Circuit refused to countenance the "huge and

10  unwarranted extension of established retaliation doctrine" that would be entailed in

11  permitting claims targeting governmental rules, as opposed to claims challenging

12  the individualized application of those rules.  *Id*. at 1294.  Among the

13  considerations supporting this distinction is the concern that "[e]xecutive and

14  legislative branches of government must not be paralyzed by the prospect of a

15  retaliation claim (and the attendant fact-based motive inquiry) whenever they make

16  new policy that is arguably in response to someone's speech or lawsuit."  *Id*.

17  (footnote omitted).[20]

18

19  was a substantial motivating factor in the defendant's conduct—i.e., that there was a
nexus between the defendant's actions and an intent to chill speech."  *Ariz.*

20  *Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) ("*Arizona*
*Students*").

21  [19] *Arizona Students* is not to the contrary. There, the Arizona Students Association

22  ("ASA"), claimed retaliation in the guise of a decision by the Arizona Board of
Regents to modify its procedures for collecting student fees on the ASA's behalf.

23  The challenged action was explicitly directed at the ASA, an individual entity

24  (which had allegedly engaged in protected activity which certain Board members
objected to), and, unlike the Media Amendment at issue here, did not have any

25  general application to other entities or organizations. *Arizona Students*, 824 F.3d at
862-64.

26  [20] The example cited by the Seventh Circuit is just one of many: "Suppose, for

27  example, that a group of drug addicts successfully sues to get disability benefits for
their addiction and Congress subsequently amends the law to prohibit benefits to

28  drug addicts. No one would reasonably suggest that Congress's motives would then
be subject to a retaliation inquiry just because it acted in response to the addicts'

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 22 -                    Case No.  3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

Indeed, there is little precedent to support the kind of fact-based inquiry into officials' motives that would be required in resolving retaliation claims aimed at generally applicable rules or laws.[21]  To the contrary, such inquiries have been outright rejected in the retaliation context: "[T]he Supreme Court has reiterated in the context of a First Amendment retaliation claim that a court cannot inquire into a legislator's motives."  *Planned Parenthood of Kan. & Mid-Missouri v. Moser*, 747 F.3d 814, 842 (10th Cir. 2014) (citing *Bogan v. Scott-Harris,* 523 U.S. 44 (1998)); *accord In re Hubbard*, 803 F.3d 1298, 1312 (11th Cir. 2015) (holding, in retaliation case, that "as a matter of law, the First Amendment does not support the kind of claim [Plaintiff] makes here: a challenge to an otherwise constitutional statute based on the subjective motivations of the lawmakers who passed it.") (citing *United States v. O'Brien*, 391 U.S. 367 (1968).  Relying on *Hubbard* and *O'Brien*, a district court recently dismissed a First Amendment retaliation claim in which the plaintiff alleged that a facially neutral parking ordinance was adopted by a municipality as retaliation for the plaintiff's behavior.  *O'Boyle v. Sweetapple*, __ F. Supp. 3d __, 2016 WL 2868915 (S.D. Fla. 2016) (holding the Supreme Court's ruling in *O'Brien* precludes a free-speech retaliation challenge to a "facially-neutral, generally applicable" ordinance).  Similarly, in *Kensington Volunteer Fire Dep't, Inc. v. Montgomery County*, the plaintiffs claimed that county officials who enacted a budget resolution that eliminated funding for administrative positions at local volunteer fire departments had acted in retaliation against them for opposing "ambulance fee" legislation supported by the County.  684 F.3d 462, 470 (4th Cir. 2012).  Affirming dismissal, the Fourth Circuit held that the district court had properly

---

success in the courts." Id. at p. 1295.

[21] The problem is particularly acute in retaliation cases, where the inquiry into motive is central to the claim.  As the U.S. Supreme Court has acknowledged in a First Amendment retaliation case, "allegations of retaliatory animus by government actors are 'easy to allege and hard to disprove.'"  *Hartman v. Moore*, 547 U.S. 250, 257 (2006) (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 175 (2004)).

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 23 -

Case No.  3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

refused to inquire into the allegedly unconstitutional motive behind the County's budget.  The Fourth Circuit concluded that the budget was a facially valid "legislative action," which, because it was "otherwise constitutional," could not be stricken down "on the basis of an alleged illicit legislative motive." *Id.* at 469.

Plaintiff's claim fails for another reason: a retaliation claim cannot be based upon the government's reasonable restriction of speech within a limited public forum.  *See Galiano v. Inst. of Governmental Studies at Univ. of Cal. at Berkeley*, No. 07-05557 SBA, 2008 WL 4155594, at *7-8 (N.D. Cal. Sept. 5, 2008) (holding that public university library was a limited public forum and finding that "[b]ecause the restriction of [Plaintiff's] speech in the library did not violate the First Amendment, he has also failed to state a claim for retaliation for an exercise of free speech."); *Wheeler v. McDaniel*, No. 1:08-CV-56, 2008 WL 4963106, at *11–12 (E.D. Tenn. Nov. 18, 2008) (engaging in forum analysis to determine if plaintiff engaged in protected activity for purposes of retaliation claim).  If the state's action in restricting the speech was constitutional, either as a reasonable restriction or a permissible time/place/manner restriction, no claim for retaliation will lie.  *See Mocek v. City of Albuquerque*, 813 F.3d 912, 930–31 (10th Cir. 2015) (collecting cases from the five federal courts of appeals dismissing retaliation claims based on restrictions in limited public fora).

The Supreme Court, when asked to find that a valid restriction on speech in a limited public forum violated the First Amendment freedom of association, held that "[w]hen . . . these intertwined rights arise in exactly the same context, it would be anomalous for a restriction on speech to survive constitutional review under our limited-public-forum test only to be invalidated as an impermissible infringement of expressive association."  *Christian Legal Soc'y* [*Hastings*], 561 U.S. at 681.  It would be even more anomalous to do so in this case, where the exact same conduct is alleged to underlie both Plaintiff's free speech claim and its retaliation claim.  A finding that an action is permissible under a forum analysis is both necessary and

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 24 -                                        Case No. 3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

sufficient to find that it did not violate the First Amendment.  *See Cornelius*, 473 U.S. at 800 ("The Court has adopted forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes.").  This is why, when faced with a dispute over whether an allegedly retaliatory arrest took place in a limited public forum, the Ninth Circuit used forum analysis to determine if the claim had merit.  *See Dirks v. Grasso*, 449 F. App'x 589, 592 (9th Cir. 2011) (holding that arrest "was not a reasonable and viewpoint-neutral restriction on [Plaintiff's] speech" to establish if defendant was entitled to qualified immunity on plaintiff's First Amendment retaliation claim).  Similarly, when protestors engaged in picketing (which is protected activity in certain contexts) in a limited public forum, the protestors' retaliation claim failed upon a showing that the city's action in removing them was reasonable and viewpoint-neutral.  *See Blomquist v. Town of Marana*, 501 F. App'x. 657, 658-59 (9th Cir. 2012).

As demonstrated above, the Media Amendment was a reasonable restriction of the forum.  Because forum analysis sustains the constitutionality of Defendants' actions, Plaintiff cannot contend that those same actions constituted unlawful retaliation against protected constitutional rights.  The Fourth Claim should be dismissed, without leave to amend.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that Plaintiff's Second Amended Complaint be dismissed in its entirety.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 25 -                    Case No. 3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  January 2, 2017          SCHIFF HARDIN LLP

By:  */s/ William J. Carroll*
William J. Carroll
Jean-Paul P. Cart
Matthew W. Callahan

Attorneys for Defendants
PRADEEP KHOSLA, DANIEL JUAREZ, and
JUSTIN PENNISH

SF\321944592.1

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 26 -          Case No.  3:16-cv-01296-JM-BLM

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT