1

2

3

4

5

SCHIFF HARDIN LLP
Matthew B. Mock (SBN 316380)
*mmock@schiffhardin.com*
5000 Birch St., Suite 3000
Newport Beach, CA 92660-2140
Telephone:   (949) 623-2000

6

7

8

9

Jean-Paul P. Cart (SBN 267516)
*jcart@schiffhardin.com*
Four Embarcadero Center, Suite 1350
San Francisco, CA  94111
Telephone:   (415) 901-8700

10

11

12

Attorneys for Defendants
PRADEEP KHOSLA, DANIEL JUAREZ,
and JUSTIN PENNISH

13

UNITED STATES DISTRICT COURT

14

SOUTHERN DISTRICT OF CALIFORNIA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| THE KOALA, an unincorporated student association,<br><br>Plaintiff,<br><br>v.<br><br>PRADEEP KHOSLA, in his official capacity as Chancellor of the University of California, San Diego; DANIEL JUAREZ, in his official capacity as President of the Associated Students of the University of California, San Diego; and JUSTIN PENNISH, in his official capacity as Financial Controller of the Associated Students of the University of California, San Diego,<br><br>Defendants. | Case No. 3:16-cv-01296-JM-BLM<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY PROCEEDINGS**<br><br>Case Filed:    May 31, 2016<br>Judge:          Hon. Jeffrey T. Miller |
| --- | --- |

## I.    __INTRODUCTION__

This case recently returned from the Court of Appeals after that Court's July 2019 decision.  Because subject-matter jurisdiction is lacking, on January 7, 2020, Defendants filed their Motion to Recall Mandate and Withdraw Opinion ("Motion to Recall") with the Ninth Circuit asking that Court to recall its mandate, withdraw its July 2019 opinion, and remand to this Court with directions to dismiss.  If the Motion to Recall is granted, the case will be over.  Any effort expended on proceedings before this Court will have been wasted.  For reasons of judicial and party economy, Defendants ask this Court to stay all further proceedings pending the resolution of the Motion to Recall.  Defendants have requested expedited relief from the Ninth Circuit, seeking a ruling by February 28, 2020.

The basis of Defendants' Motion to Recall is that Article III jurisdiction was lacking when it filed its July 2019 opinion.  In 2017, Plaintiff The Koala ceased to exist as a Registered Student Organization ("RSO") at the University. Only RSOs are eligible for the UCSD funding that is the subject of The Koala's claims, therefore any relief granted by this Court could not redress the Koala's claims. When The Koala ceased to exist as an RSO, its claims became moot.

Under the circumstances, a stay is appropriate and in the interests of judicial economy, given that the outcome of Defendants' pending motion in the Ninth Circuit has the potential to completely resolve the present case.  A stay is also appropriate because Defendants would suffer hardship if required to continue litigating this case while the Ninth Circuit is considering a motion that may result in its dismissal.  Conversely, The Koala will not suffer prejudice from a stay.

This Court should stay further proceedings pending the Ninth Circuit's resolution of Defendants' Motion to Recall.

## II.    __BACKGROUND__

Plaintiff The Koala brought this action against the Defendants seeking injunctive and declaratory relief based on an alleged violation of its First

Amendment rights.  The Koala alleges that the decision by the Associated Students ("A.S.") of UCSD to eliminate funding for print media was motivated by unlawful retaliatory animus against The Koala.

On February 28, 2017, this Court granted Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. The Koala subsequently appealed. However, while the appeal was pending, The Koala abandoned its status as an RSO. To be eligible to receive funding from A.S., an organization of students must apply for and be granted status as an RSO, and those organizations must re-register for this status every academic year.  Only an RSO is eligible to receive funding.

Although The Koala was a RSO at the time the Complaint was filed, and remained an RSO though that year and the next academic year (2016-2017), in the fall of 2017 it started but failed to complete its application for RSO status, mooting the case.  The Koala has not applied to be an RSO in any academic year since, and thus has not been an RSO at any time since the 2016-2017 academic year.  When the Ninth Circuit issued its opinion on July 24, 2019, the case had already become moot.

Defendants asked Plaintiff for any evidence to dispute the apparent lack of RSO status, but to date Plaintiff has provided none.  Accordingly, on January 7, 2020, Defendants filed the Motion to Recall with the Ninth Circuit, to raise the mootness issue.  *See* Motion to Recall, attached as Exhibit A.

## III.   <u>ARGUMENT</u>

Subject-matter jurisdiction is a paradigm threshold issue, and federal courts must address questions of standing before addressing the merits of a case where standing is called into question.  *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 93–102 (1998).  "Before reaching the merits of any claim, we are compelled to determine whether there is a case or controversy that frames our jurisdiction over the claim."  *United States v. Larson*, 302 F.3d 1016, 1019 (9th Cir. 2002).  And "[a]lthough it is rather unusual for a court to learn, after its mandate issues, that its

prior decision lacked a jurisdictional basis, the few courts confronting this issue uniformly have vacated their prior decisions." *IAL Aircraft Holding, Inc. v. F.A.A.*, 216 F.3d 1304, 1306 (11th Cir. 2000) (citing *Bumpus v. Clark*, 702 F.2d 826, 826-27 (9th Cir. 1983); *In re Grand Jury Proceedings*, 593 F.2d 906 (9th Cir. 1979)).

As Defendants demonstrate in detail in their Motion to Recall and supporting declaration, once The Koala ceased to be an RSO after the 2016-2017 academic year, its claim became moot, and the Ninth Circuit was without Article III jurisdiction to issue its July 2019 Opinion.  The Koala's unilateral decision to forfeit its RSO status deprived it of the "direct stake" needed to present a live case or controversy, mooting the case.  *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (employee's unilateral action mooted the case); *Harris v. Itzhaki*, 183 F.3d 1043 (9th Cir. 1999) (tenant's unilateral action mooted the case).  The "requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000).  Of course, subject matter jurisdiction may be raised at any time.  *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

Plaintiff bears the burden to establish that they have Article III standing to invoke federal jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 376-78 (1994).  Despite Defendants' requests, Plaintiff to date has not presented Defendant with any evidence disputing that it abandoned its RSO status in 2017.

In these circumstances, a stay is appropriate, and this Court has the inherent power to stay this action.  *See Leyva v. Certified Grocers of California, Ltd.,* 593 F.2d 857, 863-64 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.); *see also Landis v. North American Co.,* 299 U.S. 248, 254-55 (1936) ("[T]he

power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time, and effort for itself, for counsel, and for litigants."). Courts generally consider three factors when deciding whether to stay proceedings: (1) judicial economy; (2) the moving party's hardship; and (3) potential prejudice to the non-moving party. *See Hartless v. Clorox Co.,* No. 06CV2705 JAH (CAB), 2008 WL 11337595, at *1 (S.D. Cal. Nov. 6, 2008) (internal citation omitted).

Here, the interests of judicial economy weigh heavily in favor of a stay. Defendants' Motion to Recall raises the important threshold issue of the Court's subject-matter jurisdiction, and the Ninth Circuit's resolution of that matter could end the case. A stay here is appropriate in the interests of judicial economy.

The other factors weigh in favor of a stay. Defendants will suffer hardship if they are required to continue expending resources litigating a case that may shortly be dismissed, resources that would have been spent for nothing.

The stay also will not prejudice the Plaintiff. Defendants have asked the Ninth Circuit for an expedited ruling by February 28, 2020. Regardless, Plaintiff cannot be said to suffer prejudice from the stay when it was its own unilateral action to abandon its RSO. This is not a case where, for example, a defendant claims mootness following its voluntary cessation of the allegedly unlawful conduct. The mooting event was Plaintiff's voluntary action.

Thus, the "fairest course" is for the parties and for the Court to preserve their resources, and for the Court enter a stay while the Ninth Circuit decides this important issue. *See Leyva,* 593 F.2d at 863-64.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request the Court grant Defendants' Motion to Stay.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  January 13, 2020          SCHIFF HARDIN LLP

By:  */s/* Jean-Paul P. Cart

SCHIFF HARDIN LLP
Matthew B. Mock (SBN 316380)
*mmock@schiffhardin.com*
5000 Birch St., Suite 3000
Newport Beach, CA 92660-2140
Telephone:   (949) 623-2000
Facsimile:    (949) 476-3758

Jean-Paul P. Cart (SBN 267516)
*jcart@schiffhardin.com*
Four Embarcadero Center, Suite 1350
San Francisco, CA  94111
Telephone:   (415) 901-8700
Facsimile:    (415) 901-8700

Attorneys for Defendants
PRADEEP KHOSLA, DANIEL JUAREZ, and
JUSTIN PENNISH

# Exhibit A

*Appeal No. 17-55380*

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

The *Koala*, an unincorporated association,

*Appellant,*

vs.

Pradeep Khosla, in his official capacity as Chancellor of the University of California, San Diego, et al.

*Appellees.*

---

On Appeal From the United States District Court
for the Northern District of California
Hon. Jeffrey T. Miller - Case No. 3:16-cv-1296-JM-BLM

---

## MOTION TO RECALL MANDATE AND WITHDRAW OPINION

---

## RELIEF REQUESTED BY FEBRUARY 28, 2020

Pursuant to Fed. R. App. P. 27, Appellees Pradeep Khosla, Daniel Juarez, and Justin Pennish, in their respective official capacities at the University of California, San Diego (collectively, "Appellees"), hereby request that the Court recall its mandate and withdraw its July 2019 opinion in this case. Plaintiff-Appellant The Koala ("Appellant") ceased to exist as a recognized student organization ("RSO") in 2017, well before the Court issued its opinion, depriving the Court of any ability to

redress any claimed injury and mooting the appeal.  In support of this motion, Appellees state the following:

## INTRODUCTION

Appellees recognize that a request to recall an appellate mandate and to withdrawal an opinion is unusual.  But in the right circumstances, both the Supreme Court and this Court have consistently recognized that the remedy is both necessary and appropriate.  This case squarely presents those circumstances.

Appellant asserted violations of the First Amendment's Free Speech clause. Specifically, Appellant was a student newspaper and RSO at the University of California San Diego in the fall of 2015.  That fall, the University's student government, Associated Students, eliminated funding to reimburse RSOs for the costs of printing media such as newspapers.  In 2016, Appellant sued, alleging that the funding elimination violated the First Amendment.  Appellant's *eligibility for* print media funding depended on its status as an RSO, a status with an academic-year term.  Non-RSOs are indisputably ineligible for funding.

Appellant was an RSO when the initial Complaint was filed in May 2016. During the 2016-17 academic year, Appellant again sought and received RSO status. At the beginning of the 2017-18 academic year, Appellant started an application for RSO status, but abandoned it before it was complete.  Accordingly, Appellant ceased to be an RSO at the end of the 2016-17 academic year.  And this means that

Appellant was not an RSO when this Court issued its decision in July 2019. Appellees gave Appellant several opportunities before filing this motion to dispute Appellant's lack of status. Appellant provided no evidence to dispute it. No party has previously raised Appellant's lack of status with this Court.

Redressability is an absolute minimum requirement for Article III standing. Appellant's voluntary, unilateral abandonment of its RSO status in the fall of 2017 means that Appellant ceased to have the "personal interest" and "direct stake" in the outcome of this case essential for subject-matter jurisdiction. Appellant did not reanimate that interest. Accordingly, even if the District Court had granted, or were to grant now, all of the relief that Appellant seeks—reinstatement of media funding—Appellant's claims would not be redressed, because only RSOs are eligible to receive funding and Appellant—a non-RSO—is ineligible.

To be sure, Appellees appreciate that appellate courts rarely learn after their mandates have issued that at the time they filed their opinions they lacked subject matter jurisdiction. But that is what happened here. "Although it is rather unusual for a court to learn, after its mandate issues, that its prior decision lacked a jurisdictional basis, the few courts confronting this issue uniformly have vacated their prior decisions." *IAL Aircraft Holding, Inc. v. F.A.A.*, 216 F.3d 1304, 1306 (11th Cir. 2000) (collecting cases).

For the reasons discussed below, this Court should recall the mandate,

withdraw its July 24, 2019 opinion as moot, and remand this case to the District Court with instructions to dismiss for lack of subject-matter jurisdiction.

## BACKGROUND

The funding that is the subject of Appellant's claims is provided by Associated Students of the University of California, San Diego ("UCSD") ("A.S.") (Plaintiff's Second Amended Complaint ("SAC," ECF #25), at ¶¶ 17-34.)  A.S.'s revenues are derived from a Campus Activity Fee paid by UCSD students on a quarterly basis, the proceeds of which are then distributed in accordance with A.S.'s annual budget. (SAC, ¶ 18.)  As a matter of UCSD policy, to be eligible to receive funding from A.S., an organization of students must apply for and be granted status as an RSO. Declaration of Heather Belk ("Belk Decl." Ex. A hereto) at ¶¶ 5-6.

RSOs are authorized by University of California Policy PACAOS-70.10, implemented through UCSD Policy and Procedure Manual 160-9, publicly available documents that define a "Registered Student Organization" as "An organization whose membership is predominantly comprised of UC San Diego students and attains recognition through the Center for Student Involvement by complying with this policy and related procedures."  Belk Decl. (Ex. A) at ¶ 5.

Under UCSD Policy and Procedure Manual 160-9, only those RSOs "that are in good standing with the Center for Student Involvement" are "authorized to

officially conduct business with the University," which includes "managing and spending organizational funds[.]" *Id.* at ¶ 6.

Student organizations seeking to receive RSO status must re-register for this status every academic year. *Id.* at ¶ 7. To receive status as an RSO, prospective and current RSOs "must complete the registration process as established by the Center for Student Involvement and include a copy of their constitution and/or governing documents along with other required documents," and complete other requirements specified in the Policy and Procedure Manual and by UCSD's Center for Student Involvement. *Id.* at ¶¶ 8, 10, 11. There is no cost to students to submit an application, to register as an RSO, or to re-register after previously obtaining RSO status. *Id.* at ¶ 9.

The Koala held RSO status in the 2015-16 academic year and the 2016-17 academic year. *Id.* at ¶¶ 13-14. It started an application to remain in existence as an RSO in August of 2017, but never completed it. *Id.* at ¶ 15. The Koala has not existed as an RSO since the end of the 2016-17 academic year. *Id.* at ¶¶ 16-17. The Koala is not now an RSO. *Id.* at ¶ 18.

Additional key events and their timing are set forth below.

| Date | Event | Support |
|---|---|---|
| 10/19/2015 | Appellant was an RSO for the 2015-2016 academic year. | Belk Decl. (Ex. A) at ¶ 13. |
| 11/18/2015 | Associated Students of the University of California, San Diego eliminated funding for printed media reimbursements. | SAC at ¶¶ 78, 86. |
| 5/31/2016 | Initial Complaint filed. As Appellant alleged, was an RSO at this time. | Complaint, ECF #1, at ¶¶ 9, 35; Belk Decl. (Ex. A) at ¶ 13. |
| 8/22/2016 | Appellant applied to remain in existence as an RSO for the 2016-2017 academic year. | Belk Decl. (Ex. A) at ¶ 14. |
| 12/21/2016 | The University granted Appellant's RSO application; Appellant was an RSO for 2016-2017 academic year. | Belk Decl. (Ex. A) at ¶ 14. |
| 2/28/2017 | District Court granted Motion to Dismiss Second Amended Complaint. | ECF #33 |
| 3/22/2017 | Notice of Appeal filed. | ECF #35 |
| 7/31/2017 | Appellant's Opening Brief filed. | No. 17-55380, Docket Entry #6 |
| 8/28/2017 | Appellant initiated application to be an RSO for the 2017-2018 academic year, but did not complete its application. | Belk Decl. (Ex. A) at ¶ 15. |
| | ***---Case is mooted---*** | |
| Fall 2018 | Appellant did not apply to be an RSO for the 2018-2019 academic year. Appellant is not an RSO. | Belk Decl. (Ex. A) at ¶¶ 16, 19. |
| **7/24/2019** | **This Court's Opinion filed.** | **No. 17-55380, Docket Entry #45** |

| Fall 2019 | Appellant did not apply to be an RSO at the beginning of the 2019-20 academic year.<br><br>Appellant does not exist as an RSO. | Belk Decl. (Ex. A) at ¶ 18. |
|---|---|---|
| 11/25/2019 | This Court's Mandate issued. | No. 17-55380, Docket Entry #63 |
| 12/5/2019 | Appellant applied for RSO status for the 2019-2020 academic year; application is incomplete. | Belk Decl. (Ex. A) at ¶ 20. |
| 1/6/2020<br><br>(present) | Appellant's application remains incomplete; Appellant is not an RSO. | Belk Decl. (Ex. A) at ¶¶ 18-20. |

**Statement Pursuant to Circuit Rule 27-1:** Counsel for Appellant opposes this Motion.

## ARGUMENT

### A. Legal Standards

The Supreme Court has established that the "irreducible constitutional minimum" of standing has three elements: (1) the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) likelihood that

the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

To qualify as a case fit for federal court adjudication, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). The "requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000).

The party invoking federal jurisdiction bears the burden of showing that such jurisdiction is proper. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 376-78 (1994). The constitutional requirements for Article III standing are jurisdictional, cannot be waived by any party, and may be considered *sua sponte*. *City of Los Angeles v. Cnty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009). Subject matter jurisdiction may be raised at any time. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

### B.     Appellant's Unilateral Abandonment of its RSO Status Mooted the Controversy

Appellant unilaterally abandoned its RSO status in the fall of 2017. This ended Appellant's existence as an RSO and its direct stake in the controversy, and mooted the case. Appellant has not existed as an RSO since that time. Because the case was moot at the time this Court filed its July 24, 2019 opinion, this Court lacked

subject-matter jurisdiction.  The appropriate remedy is to recall the mandate and withdraw the opinion.

The timing of events establishes that the case was moot.  The allegedly violative conduct—withdrawal of funding for printed media reimbursements— occurred in the fall of 2015.  Appellant continued to exist as an RSO for the rest of the 2015-16 academic year.  It then applied for RSO status for the next academic year, 2016-17.  The University granted that application, and Appellant was an RSO during the 2016-17 year.  In the 2017-18 academic year, however, Appellant applied for RSO status, but never completed it, abandoning the application before approval, meaning it ceased to exist as an RSO no later than the fall of 2017.  This Court's opinion was issued in July 2019.

Appellant's unilateral decision to forfeit its RSO status mooted the case. *Arizonans for Official English* is squarely on point.  There, the challenged action was a new law that made it unlawful for state government employees to speak languages other than English when carrying out official duties.  When the case was filed, the plaintiff was a state employee, and accordingly covered by the new law. But as the litigation continued, and an appeal was brought before this Court, the plaintiff made the unilateral decision to quit her state job and take a position with a private employer (an entity not subject to the new law).  *Arizonans for Official English,* 520 U.S. at 72.

The Supreme Court held that the plaintiff's "changed circumstances—her resignation from public sector employment to pursue work in the private sector—mooted the case stated in her complaint." *Id.*   After finding that the plaintiff's unilateral decision to quit her job rendered the case moot as of that date, the Supreme Court vacated this Court's 1995 *en banc* decision, and remanded the case to this Court with directions that the case be dismissed by the District Court.  *Id.* at 80.[1] *See also Iron Arrow Honor Soc. v. Heckler*, 464 U.S. 67, 72–73 (1983) (vacating judgment when Court of Appeals had ruled on merits although case had become moot).

The nature and timing of the mooting event in *Arizonans* is similar, in important ways, to the mooting event here.  Both mooting events occurred well *before* this Court's decisions were filed.  Both events were caused by the plaintiff taking unilateral action, not by any action of the defendants.  Accordingly, this is not a case where the defendant raises mootness following its cessation of alleged offending conduct. Nor is it a case where the mooting event occurred after this Court's opinion issued, as can occur when parties settle post-decision.

---

[1] The case resulted in this Court filing several opinions: a first panel opinion in 1991, *see Yniguez v. State of Ariz.*, 939 F.2d 727, 729 (9th Cir. 1991); a second panel opinion in 1994, *see Yniguez v. Arizonans for Official English*, 42 F.3d 1217 (9th Cir. 1994), and a final, *en banc* decision in 1995.  *See Yniguez v. Arizonans for Official English*, 69 F.3d 920, 924 (9th Cir. 1995) (*en banc*).  The plaintiff quit her state job in April 1990.  *See Arizonans*, 520 U.S. 43 at 59-60.

Likewise, in *Harris v. Itzhaki*, 183 F.3d 1043 (9th Cir. 1999), the plaintiff's unilateral actions partially mooted the controversy. There, the plaintiff alleged that the owners of an apartment complex in which she lived discriminated against people of certain races in violation of the Federal Fair Housing Act, 42 U.S.C. § 3601 et seq. *Id.* at 1047-50. After the District Court issued its decision and while the case was pending on appeal, the plaintiff moved out of the apartment. *Id.* at 1050.

While recognizing that "[t]he Supreme Court has long held that claims brought under the Fair Housing Act are to be judged under a very liberal standing requirement," *id.* at 1049, this Court (citing *Arizonans*) held that when the plaintiff moved out, she mooted her claims for injunctive and declaratory relief. *Id.* at 1050 (citing *Arizonans*, 520 U.S. 43 at 71.) This Court held that the plaintiff still had standing to pursue her claims for money damages, because those remedies were not prospective in nature. *Id.*

Here, Appellant sought entirely prospective relief. Specifically, Appellant sought an order permanently enjoining Appellees from "excluding The Koala from eligibility to seek campus activity fee funding," as well as a declaration that Appellees' conduct was unlawful. (SAC at Prayer, ¶¶ 1-2). Appellant sought no money damages—nor could it have, under the Eleventh Amendment. *See Ex parte Young*, 209 U.S. 123 (1908) (private individuals may sue state officials in federal

court for prospective relief from ongoing violations of federal law, but not for money damages); *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

Appellant has not existed as an RSO since at least the fall of 2017. It has no standing to pursue claims for prospective relief and cannot seek retrospective relief. Its claims for prospective relief are moot, just like the plaintiff tenant's prospective claims were mooted in *Harris*. *See also Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (case rendered moot when plaintiffs sought "only declaratory and injunctive relief, not damages").

There is no relief left for the District Court to grant that would redress Appellant's alleged injury. An order restoring media funding generally could not redress *Appellant's* injury, because only RSOs are eligible for funding, and Appellant is not an RSO.

In *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), the plaintiff was an environmental organization who brought a citizen suit for, among other relief, civil penalties. *Id.* at 86-88. The Supreme Court dismissed the case as moot, holding that the availability of civil penalties did not confer standing on the plaintiff, because even if the suit was successful, the plaintiff would not receive the monies—the United States Treasury would. *Id.* at 106, 109-10. Thus, the requested relief would not redress any injury suffered by *the plaintiff*. Similarly here, while

12

RSOs might benefit from a restoration of media funding, Appellant would not, and so that relief would not redress its claimed injury.

Nor can any eventual request for attorneys' fees confer standing. *Id.* at 107 (An "interest in attorney's fees is. . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.") (citation omitted).

Appellant is not now an RSO. Appellees are aware that on December 5, 2019, several UCSD students submitted an application to create an RSO called "The Koala." But those students have not satisfied the requirements necessary to complete their application (specifically, half of the representatives have not completed the required training and have not submitted an organizational constitution meeting University requirements). Belk Decl. (Ex. A) ¶ 20.

We expect that the ACLU may argue that that this recent application means that subject matter jurisdiction is present. It does not. This new application, even if eventually granted, certainly cannot retroactively establish subject matter jurisdiction at the time this Court filed its opinion in July 2019. And the filing of an application means nothing if it is not completed, and this application may never be completed. When Appellant abandoned its RSO application in the fall of 2017, the same shortcomings present now also existed then: half of Appellant's student representatives had not completed the required training, and had not submitted a

13

constitution that met University requirements.  Belk Decl. (Ex. A) ¶¶ 15, 20.  It would be speculative to assume that the students will complete the new application.

### C. Recall of the Mandate and Withdrawal of this Court's July 24, 2019 Opinion is Necessary and Appropriate.

"If a case becomes moot while pending on appeal, it must be dismissed." *In re Pattullo*, 271 F.3d 898, 900 (9th Cir. 2001).  This Court lacked subject-matter jurisdiction when it filed its opinion on July 24, 2019.  The mandate must be recalled, the filed opinion must be withdrawn, and the case remanded to the District Court with directions to dismiss.  *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997); *Iron Arrow Honor Soc. v. Heckler*, 464 U.S. 67, 72–73 (1983); *Bumpus v. Clark*, 702 F.2d 826, 826-27 (9th Cir. 1983); *In re Grand Jury Proceedings*, 593 F.2d 906 (9th Cir. 1979).  "Although it is rather unusual for a court to learn, after its mandate issues, that its prior decision lacked a jurisdictional basis, the few courts confronting this issue uniformly have vacated their prior decisions." *IAL Aircraft Holding, Inc. v. F.A.A.*, 216 F.3d 1304, 1306 (11th Cir. 2000) (citing *Bumpus* and *In re Grand Jury Proceedings*).

### RULING REQUESTED BY FEBRUARY 28, 2020

Pursuant to 9th Cir. R. 27-1(3), Appellees respectfully request a ruling by February 28, 2020.  Appellees wish to preserve their right to seek review with the United States Supreme Court, to, at a minimum, raise the subject-matter jurisdiction issues presented herein.  Appellees on January 7, 2020 filed an application with

14

Justice Kagan, seeking a 30-day extension of the time in which to file their petition for *certiorari* to the United States Supreme Court. Appellant has advised that it does not oppose that extension request. With such an extension, the petition would be due on March 16, 2020.

## CONCLUSION

For the foregoing reasons, Appellees respectfully request that the Court recall its mandate, withdraw its July 24, 2019 opinion, and remand this case to the District Court with instructions to dismiss for lack of subject-matter jurisdiction.

Dated: January 7, 2020          Respectfully submitted,

/s/ Neil Lloyd
Neil Lloyd (Bar No. 317457)
SCHIFF HARDIN LLP
233 S. Wacker Dr.
Ste. 7100
Chicago, IL 60606
Telephone: (312) 258-5500
Facsimile: (312) 258-5600
nlloyd@schiffhardin.com

Matthew B. Bock (Bar No. 316380)
SCHIFF HARDIN LLP
5000 Birch St.
Suite 3000
Newport Beach, CA 92660-2140
Telephone: (949) 623-2000
Facsimile: (949) 476-3758
mmock@schiffhardin.com

Jean-Paul P. Cart (Bar No. 267516)

SCHIFF HARDIN LLP
Four Embarcadero Center
Suite 1350
San Francisco, CA  94111
Telephone:  (415) 901-8700
Facsimile:   (415) 901-8701
jcart@schiffhardin.com

Attorneys for Appellees

**Certificate of Word Count**

Under Fed. R. App. P. 27(d)(2)(A), the undersigned certifies that this motion

contains 3,138 words.


/s/ Neil Lloyd
Neil Lloyd

*Appeal No. 17-55380*

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

The *Koala*, an unincorporated association,

*Appellant,*

vs.

Pradeep Khosla, in his official capacity as Chancellor of the University of California, San Diego, et al.

*Appellees.*

—————————————

On Appeal From the United States District Court
for the Northern District of California
Hon. Jeffrey T. Miller - Case No. 3:16-cv-1296-JM-BLM

—————————————

## DECLARATION OF HEATHER BELK
## IN SUPPORT OF DEFENDANTS' MOTION
## TO RECALL MANDATE AND WITHDRAW OPINION

—————————————

## RELIEF REQUESTED BY FEBRUARY 28, 2020

Pursuant to 28 U.S.C. § 1746, Heather Belk declares as follows:

1.      My name is Heather Belk.  I am over 18 years of age, have personal knowledge of the facts set forth in this Declaration, and if called as a witness, could testify competently about the facts within this Declaration.  I offer this

1

Declaration in support of Defendants' Motion to Recall Mandate and Withdraw Opinion.

2.     I am employed by the University of California, San Diego, ("UCSD") as the Director, Associated Students Administration.  I have held this position since 2012.  I have responsibility for the administration of Associated Students and supervise a staff of over 10 employees.

3.     As part of my job responsibilities, I am familiar with the processes by which students may apply for and obtain registered student organization ("RSO") status for their unincorporated associations, and the policies issued by both the University of California system and UCSD pertaining to these processes.  I am familiar with, and use as part of my employment, the UCSD systems and databases that store information regarding applications for RSO status.

4.     Associated Students of UCSD ("A.S.") provides certain funding to RSOs.  The funding that I understand to be the subject of The Koala's claims is provided by A.S.'s operating funds, which are derived from a Campus Activity Fee paid by UCSD students on a quarterly basis, the proceeds of which are then distributed in accordance with A.S.'s annual budget.  (Plaintiff's Second Amended Complaint (ECF #25), at ¶¶ 17-34.)

5.     As a matter of UCSD policy, to be eligible to receive funding from A.S., an organization of students must apply for and be granted status as an RSO.

2

RSOs are authorized by University of California Policy PACAOS-70.10,

implemented through UCSD Policy and Procedure Manual 160-9.  These policies

define a "Registered Student Organization" as "An organization whose

membership is predominantly comprised of UC San Diego students and attains

recognition through the Center for Student Involvement by complying with this

policy and related procedures."  These policies are publicly available at:

https://policy.ucop.edu/doc/2710527/PACAOS-70  (PACAOS-70) (last accessed

January 3, 2020) and http://adminrecords.ucsd.edu/PPM/docs/160-9.html (UCSD

Policy 160-9) (last accessed January 3, 2020).

   6.  Under UCSD Policy and Procedure Manual 160-9, only those RSOs

"that are in good standing with the Center for Student Involvement" are

"authorized to officially conduct business with the University," which includes

"managing and spending organizational funds[.]"  (UCSD Policy 160-9.)

Associated Students has adopted rules for the student organization funding process.

Standing Rules, Title II, § 10.4 (formerly Title V, §§ 2.4, 2.5). A registered student

organization under the Standing Rules is a registered campus organization under

University of California policy.  Under the rules, "[a] student organization must be

a registered student organization to request funding through a student organization

funding process[.]" Standing Rules, Title II, §§ 10.5(a), 10.5(d) (formerly Title V,

§§ 2.5(a), 2.5(f)).

3

7.      Student organizations seeking to receive RSO status must re-register for this status every academic year.  (UCSD Policy 160-9.)

8.      To receive status as an RSO, prospective and current RSOs "must complete the registration process as established by the Center for Student Involvement and include a copy of their constitution and/or governing documents along with other required documents," and complete other requirements specified in the Policy and Procedure Manual.   (UCSD Policy 160-9.)

9.      There is no cost to students to submit an application, to register as an RSO, or to re-register after previously obtaining RSO status.  (UCSD Policy 160-9.)

10.      The Center for Student Involvement also publishes a registration guide with detail regarding how to apply for RSO status and the specific requirements necessary: https://getinvolved.ucsd.edu/orgs/register.html#Learn-the-benefits-of-registeri (last accessed January 3, 2020).

11.      Among other requirements, the four Principal Members of any candidate organization must complete the ART of Inclusive Communication Workshop, and must submit a proposed organizational constitution that meets certain requirements.

12.      I am familiar with, and use as part of my employment, the UCSD systems that electronically store information and records regarding applications for

RSO status made by UCSD students and student organizations. In preparing this Declaration, I have asked a member of my staff to pull records from those systems related to The Koala's RSO applications in the last several years, and the status of those applications. Those records were made at or near the time of the events reflected therein by — or from information transmitted by — persons with knowledge; they were kept in the course of UCSD's regularly conducted activities; and making such records was a regular practice of those activities. In those records I found the information specified in paragraphs 13-20 below.

13. On or about August 24, 2015, The Koala applied for RSO status for the 2015-16 academic year, and on or about October 19, 2015, the University granted that application. The Koala held RSO status during the 2015-2016 academic year.

14. On or about August 22, 2016, The Koala applied for RSO status for the 2016-17 academic year, and on or about December 21, 2016, the University granted that application. The Koala held RSO status the 2016-2017 academic year.

15. On or about August 28, 2017, The Koala started an application for RSO status for the 2017-2018 academic year, but never completed it. The application was incomplete because two of the four student representatives did not complete the communication training required of all student representatives, and

because an organizational constitution meeting the required criteria was never submitted. The Koala was not an RSO during the 2017-2018 academic year.

16. The Koala did not apply for RSO status during the 2018-2019 academic year.

17. The Koala has not held RSO status since the end of the 2016-17 academic year. The Koala was not an RSO as of July 24, 2019.

18. The Koala did not apply for RSO status at the beginning of this academic year. The Koala is not now an RSO.

19. A list of the organizations that currently hold RSO status is publicly available at https://studentorg.ucsd.edu/Home/Index/15 (last accessed January 3, 2020). A list of the organizations that held RSO status in the 2018-2019 academic year is publicly available at: https://studentorg.ucsd.edu/Home/Previous (last accessed January 3, 2020).

20. On December 5, 2019, several UCSD students submitted an application to create an RSO called "The Koala." As of today, those students have not satisfied the requirements necessary to complete their application. Specifically, two of the four representatives have not completed the required communication training; and the students have not submitted an organizational constitution meeting UCSD requirements.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 6, 2020.

Heather Belk, M.A.